Argued July 6, affirmed November 24, 1965

# RYAN *v.* WESTERN PACIFIC INSURANCE COMPANY

### 408 P. 2d 84

*Frederic P. Roehr,* Portland, argued the cause for appellant. With him on the brief were Vergeer & Samuels, Portland.

*Mel Kosta,* Portland, argued the cause and filed a brief for respondent.

Before McAllister, Chief Justice, and Perry, Sloan, *O'Connell, Goodwin, Denecke and Holman, Justices.

DENECKE, J.

The issue is whether the negligent driver was a permissive user and thereby covered under the omnibus clause of the comprehensive liability policy issued by defendant.

The defendant's policy named Tum-A-Lum Lumber Company and other business concerns and individuals as the named insureds. Paragraph III of the insuring agreement of the policy provides:

"DEFINITION OF 'INSURED': The unqualified word 'insured' wherever used includes not

---

* O'Connell, J., did not participate in this decision.

only the named insured but also * * * (3) any person while using an automobile owned or hired by the named insured or spouse and any person or organization legally responsible for the use thereof *provided the actual use is with the permission of the named insured or spouse.* * * *"* (Emphasis added.)

The negligent driver, Sinovic, was an employee of Tum-A-Lum, which operates a Portland retail lumber yard. The yard's Portland location is not in the record. Sinovic was not a named insured in the policy. On Saturday, the manager of the yard authorized Sinovic to take a Tum-A-Lum pickup to move some furniture in northwest Portland. The manager had authority to do so. Sinovic was to return the truck that night if it was not too late when he finished moving; otherwise, he could return it Sunday morning.

Sinovic finished moving, took the pickup to downtown Portland to a show, went out to a club in northeast Portland, where he ate and perhaps drank. The accident happened at 1:45 a.m. near the club. Plaintiff recovered a judgment against Sinovic for the personal injury and property damage suffered in the accident. This action is to collect that judgment. He failed in his attempt to recover against Tum-A-Lum.

Tum-A-Lum's manager did not expressly restrict the area or purpose for which Sinovic could use the pickup. The manager said it was an unwritten rule of his employer that employees could not use company cars for personal affairs. He said he would not have permitted Sinovic to use the pickup for personal entertainment. Sinovic did not testify about his knowledge of any company policy for the use of company cars. He merely stated that he asked to use the pickup for

moving. We will assume the use of the car was beyond the scope of the permission given.

The trial court concluded that the use of the car at the time of the accident "was, following the liberal view of permissible use, with such permission" and gave judgment against defendant.

■ The present problem and its relation to a problem superficially similar must be kept in mind. The present problem is not whether the driving of Sinovic was performed within the scope of his employment by Tum-A-Lum, which, if a fact, would impose liability upon Tum-A-Lum. The general rule is that an employee is acting within the scope of his employment, although he has made a minor deviation to take care of a personal matter. Mechem, Outlines of the Law of Agency (4th ed), 262-263. If the deviation is substantial, the employee is deemed not within the scope of his employment but on "a frolic of his own." *Joel v. Morison* (1834), 6 C & P 501. Tum-A-Lum has previously been held not liable to plaintiff. However, here, the problem is not whether Sinovic was acting within the scope of his employment; the problem is whether Sinovic, who was held individually liable to plaintiff, is insured individually as a permissive user under Tum-A-Lum's policy. The scope-of-employment problem is mentioned only because of sometime confusion with the problem at hand.

Whether Sinovic is insured is a question of contract. Was Sinovic's "actual use * * * with the permission of the named insured"?

Primarily, the original purpose of the omnibus clause was to protect members of the family or household who drove the family car. 12 Couch, Insurance (2d ed), § 45.293. However, the present purpose is

to extend the coverage beyond the family-purpose doctrine. *United States Fidelity & Guaranty Co. v. Brann,* 297 Ky 381, 180 SW2d 102, 104 (1944). It is now required by statute in many instances; that is not true of the present policy. One purpose is: "It may free the original insured from being sued, as in the case where the injured person brings suit instead against the additional insured for the purpose of establishing the existence of a covered liability." 12 Couch, supra, at 307.

The purposes of the omnibus clause do not afford any substantial assistance in interpretation of the clause.

The clause permits a practice contrary to the usual insurance procedure. Usually, the insurer selects the risks it desires to cover and rejects those it believes are undesirable. Under the omnibus clause, the named insured selects the risk to be covered. 12 Couch, supra, § 45.293, n 18, 307. From our knowledge we believe an owner's usual motive in limiting the scope of the permission granted is to limit the use of his vehicle, and no thought is usually given to the effect of such limitation upon the permittee's insurance coverage. This makes finding a logical interpretation of the omnibus clause more difficult. The named insured's intent has nothing to do with insurance coverage, yet we are attempting to use that express or implied intent to determine the question of coverage.

The language of the clause is not particularly helpful. The original clause stated that the driver was covered if the "use" was with permission. Later, it was changed to read as the present policy does,—"use" was modified by the addition of "actual" and it now reads "actual use." 12 Couch, supra, § 45.328. The

decisions have varied in determining whether the addition of "actual" changed the meaning, and if so, to what extent. 12 Couch, supra. It appears that "actual" was intended in some way to restrict "use" but the precise restriction cannot be determined.

There are many decisions from other jurisdictions on this issue. See Annotation 5 ALR2d 600 (1949). These have been catalogued as falling into one of three rules: (1) The "strict" or "conversion" rule, i.e., any deviation from the scope of the permission given ends coverage; (2) The "minor deviation" rule, i.e., a minor deviation from the scope of the initial permission does not end coverage, but a major deviation does; and (3) The "liberal" or "initial permission" rule, i.e., the permittee is covered although the use is beyond the scope of the initial permission unless the use so far exceeds the initial permission that the permittee is akin to a thief or converter.

This court has never decided this issue. In *Denley v. Oregon Auto Ins. Co.,* 151 Or 42, 55, 47 P2d 245, 47 P2d 946 (1935), the opinion referred with apparent approval to the decisions embracing the "liberal" rule, including the leading case of *Dickinson v. Maryland Casualty Company,* 101 Conn 369, 125 A 866, 41 ALR 500 (1924). At best, however, that opinion contained only an indirect dictum approving the liberal rule. We consider the question still an open one.

We are loathe to adopt any one of these rules. None, in our opinion, exactly fits our views on the proper solution to the problem. For example: In *Waits v. Indemnity Ins. Co. of North America,* 215 La 349, 40 S2d 746 (1949), one Selby was employed by the named insured to drive a bus carrying railroad employees out to the job. Selby brought the bus back

every day at 5:00 o'clock and parked it upon railroad property. It was not locked; it had no key and had to be started by crossing the ignition wires. Selby was specifically instructed not to use the bus for anything except to haul railroad employees out to the job. One night about 8:00 o'clock Selby drove himself and four others some 17 miles to a saloon where they had a party. Selby told one of his companions that he did not have permission to so use the bus. On the return Selby negligently injured another.

Louisiana previously had adopted the initial-permission rule and in this case interpreted it to make Selby a permissive user and covered under the omnibus clause.

New Jersey has also adopted the initial-permission rule. In *Small v. Schuncke,* 42 NJ 407, 201 A2d 56 (1964), the named insured became hospitalized in Baltimore. He asked his nephew to drive his car and take the insured's wife to and from the hospital and do other errands for her. On Friday evening the nephew picked up a friend and decided to drive in the insured's car to New York for the weekend. Somewhere enroute, the friend took over the driving and negligently injured plaintiff near Newark, New Jersey. The court held that the initial-permission rule required a holding that the car was being driven by a permissive user and that there was coverage.

■ We have a policy of interpreting the intent of the parties to a contract according to the language of the contract. We have already stated that the modification of "use" to "actual use" was intended to be restrictive, but in exactly what degree we were unable to determine. The above two decisions, in our opinion, do

not reasonably interpret the language used by the insurer to express its contractual obligation.

On the other hand, the "strict" rule does not appeal to us. To hold that any deviation from the permission granted ends coverage is not required by the language of the clause and is contrary to another policy of this state. That policy is to protect those injured by careless drivers. *In re Vilas' Estate,* 166 Or 115, 135, 110 P2d 940 (1941); *State Farm Ins. Co. v. Farmers Ins. Exch.,* 238 Or 285, 387 P2d 825, 393 P2d 768 (1964). If inconsequential deviations are an exception to the strict application of the rule, as they appear to be in some states ostensibly adhering to that rule, it is really a restricted application of the "minor deviation" rule.

Our views are probably closer to those expressed by the courts who have broadly interpreted the "minor deviation" rule. For example, in *Yorkshire Indemnity Co. of New York v. Collier,* 172 F2d 116 (6th Cir 1949), the named insured's employee was instructed to take the insured's car to a designated garage, get gas and oil, and have it back to the insured by 5:00 o'clock. The employee was told he could do this any time during the day. The employee picked up a girl, fueled the car, and then went for what the employee described as "a little pleasure trip." He testified he went up the road away from the insured's home and "was going to turn around at the first convenient place." The accident occurred about four or five miles beyond the garage. The court applied what is usually labeled the "minor deviation" rule; however, they used the terminology, "not a material deviation." They held the driver was a permissive user at the time of the accident.

We do not, however, categorically adopt the minor-

deviation rule as there are a substantial number of pronouncements of it which are more restrictive than we believe is appropriate. For example, in *Phoenix Indemnity Co. v. Anderson,* 170 Va 406, 196 SE 629 (1938), the assistant manager of a grocery store was authorized to take the grocery's truck from Wake Forest to Raleigh, North Carolina. At Raleigh he would buy fresh vegetables and bring them back to Wake Forest. Sometimes he would go early in the morning and sometimes at night after work and come back in the morning. If he did the latter, he would stay at his brother's house in Raleigh. On the particular trip involved in the case, he drove to his brother's house, ate, and about 9:00 p.m. went to the vegetable market to see if he could buy some bargains. He bought nothing. He stopped in to see a friend. They ate and drank and about midnight he started to return to his brother's house. He unintentionally made a wrong turn and found himself going out of town; he decided he did not want to go home just yet and continued on his way. The accident occurred about five miles out of town.

The majority held: "The use of the truck upon the occasion in judgment was without permission of the named assured and was not merely a casual deviation from the limitation imposed by the master." (196 SE at 633)

■ Our view of the solution lies between the initial-permission rule and the minor-deviation rule as applied in the last example. If the use is the same as that generally authorized—in the case of an employee, personal use as distinguished from business use—and the time and place of use do not represent a gross deviation from that authorized, the driver is a permissive

user and covered under the omnibus clause. We realize "gross" is no more definitive than "minor" but it better expresses our thinking of the proper criterion.

These three factors—purpose, time and place—are interrelated just as are speed, control and lookout. If the purpose is closely related to the purpose for which permission was originally granted a greater variance in the time or place of use might not oust the driver from the coverage of the omnibus clause. Similarly, driving for a purpose not so closely related to that for which permission was originally granted might not terminate coverage if the time and place variance is slight.

Adoption of such a solution does not appear to offer the certainty that the "strict" or "liberal" rules do. However, the certainty of these rules in some states is illusory. The jurisdictions following the "strict" rule sometimes overlook "immaterial" deviations. 12 Couch § 45.463. At least one court following the "initial permission" test held there was no coverage because the deviation was too substantial. *Boehringer v. Continental Casualty Co.,* 7 Wis2d 201, 96 NW2d 353 (1959).

The rule we state is no more indefinite than that used in determining what acts are within the scope of the employment. Fact situations occasionally arise which are difficult to categorize but the profession in most situations can predict whether a given act was within or without the scope of employment.

■ Sinovic was permitted to use the car in Portland for a personal use, furniture moving. He was permitted to have the car overnight. At the time of the accident he was still driving for a personal use, although a different use than was contemplated by the

person giving permission. The time and place where the accident occurred were within the general permission granted. We conclude that Sinovic was a permissive user at the time of the accident.

Affirmed.

McALLISTER, C. J., dissenting.

Even under the broadest interpretation of the minor deviation rule, Sinovic's use of the truck was not permissive. He had asked and been given permission to use the truck on a Saturday afternoon to move his household furniture from his mother's residence to his apartment, and was to return the truck that evening, or the next morning. After moving his furniture, he used the truck to go to a movie in downtown Portland and then to a club in northeast Portland. The accident occurred shortly after he left the club, at about 1:45 a.m. The trial court found that the accident occurred at a time when the moving operation had been completed and away from the area where the moving operation was conducted. In my opinion the use at time of the accident was not within the permission granted.

I dissent.