Argued and submitted May 4, decision of the Court of Appeals reversed; judgment of
the circuit court affirmed July 29, 1993

Kenneth MOORE,
*Respondent on Review,*

*v.*

MUTUAL OF ENUMCLAW
INSURANCE COMPANY,
*Petitioner on Review.*

(CC 9102-00723; CA A71176; SC S39842)

855 P2d 626

Thomas M. Christ, Portland, argued the cause and filed the petition for petitioner on review.

Robert E. L. Bonaparte, of Tooze Shenker Holloway & Duden, Portland, argued the cause and filed the responses for respondent on review. With him on the responses was Michael J. Gentry.

GILLETTE, J.

## GILLETTE, J.

This case involves a claim made under a fire insurance policy with extended coverage. Plaintiff brought an action for breach of the insurance contract. The trial court granted summary judgment in favor of defendant on the ground that plaintiff had not commenced the action within the period allowed by a limitations clause of the policy. The Court of Appeals reversed and remanded, holding that there were genuine issues of material fact as to whether defendant had waived that clause. *Moore v. Mutual of Enumclaw Ins. Co.*, 113 Or App 574, 579, 833 P2d 1310, *modified and adhered to as modified* 116 Or App 206, 840 P2d 1320 (1992). We reverse the decision of the Court of Appeals and reinstate the judgment of the circuit court.

On review of a summary judgment, we determine whether the moving party is entitled to judgment as a matter of law. ORCP 47C; *Stevens v. Bispham*, 316 Or 221, 223, 851 P2d 556 (1993). We view any evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Id.*

The Oregon Insurance Code requires insurers to include certain provisions in all fire insurance policies. ORS 742.202;[1] *see also Molodyh v. Truck Insurance Exchange*, 304 Or 290, 293, 744 P2d 992 (1987) (so stating). One such provision is the "nonwaiver" clause of ORS 742.222, which provides:

> "A fire insurance policy shall contain a provision as follows: 'No permission affecting this insurance shall exist, or waiver of any provision be valid, unless granted herein or expressed in writing added hereto. No provision, stipulation or forfeiture shall be held to be waived by any requirement or proceeding on the part of this company relating to appraisal or to any examination provided for herein.' "

---

[1] ORS 742.202 provides:

"Except as provided in ORS 742.204, no fire insurer, its officers or agents, shall use any fire insurance policy or renew any fire insurance policy on property in this state unless it contains the provisions set forth in ORS 742.206 to 742.242, which shall form a portion of the contract between the insurer and the insured."

Another such provision is the "limitations" clause of ORS 742.240. Before 1991, that statute provided:

> "A fire insurance policy shall contain a provision as follows: 'No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss.' "[2]

Plaintiff owned a house insured under a fire insurance policy issued by defendant. That policy contained both the statutorily required nonwaiver clause and the statutorily required limitations clause. In addition to insuring against loss from fire, the policy also insured against loss from "vandalism or malicious mischief."

Plaintiff rented the house to tenants from July 1989 to October 1990. On October 15, 1990, a state police officer notified plaintiff that a woman had confessed to "cooking" methamphetamine in plaintiff's house.[3] On October 22, 1990, plaintiff submitted a claim to defendant for damage resulting from the drug manufacture.[4]

On October 30, defendant sent a letter to plaintiff that showed the "date of loss" as October 15, 1990. The letter stated that defendant would investigate the claim subject to the enclosed "Reservation of Rights and Non-Waiver Agreement." That agreement, which plaintiff signed on November 5, provided in part:

> "It is hereby understood and agreed by and between the assured and the Company that any action taken heretofore or hereafter by the Company relative to that certain loss of October 15, 1990, shall not be construed nor any attempt made to construe any action as indicating any waiver of the

---

[2] In 1991, the legislature amended ORS 742.240 to extend the time for bringing an action from 12 months to 24 months. Or Laws 1991, ch 437, § 1. That amendment applies to policies issued or renewed on or after January 1, 1992. *Id.* §§ 2, 3. Because the policy in this case was issued before that date, the 12-month limitations period applies here.

[3] The date that the drug manufacture occurred is uncertain; however, the parties have stipulated that it occurred some time before February 1, 1990.

[4] The process of "cooking" methamphetamine caused damage by producing toxic vapors that permeated the walls, ceilings, floors, and other surfaces of the house.

Company's rights to stand upon the provisions of its policy
* * *."

On November 9, 1990, a claims representative of defendant recorded a statement by plaintiff about the claim. During that statement, plaintiff told the representative that the "cooking" may have taken place during the occupancy of a tenant who had resided in the house between mid-July 1989 and mid-November 1989. Nonetheless, even the transcription of plaintiff's statement, typed on December 3, 1990, had a notation that the date of loss was October 15, 1990.

On December 17, 1990, defendant tendered a check to plaintiff for $2,268.62 "in settlement" of the claim. That check also showed the date of loss as October 15, 1990. Plaintiff refused the tender, because he believed that the amount tendered was substantially less than the amount to which he was entitled.

On February 1, 1991, plaintiff brought an action against defendant for breach of the insurance contract. In its answer to plaintiff's complaint, defendant pleaded the limitations clause of the contract as an affirmative defense. Thereafter, defendant moved for summary judgment, arguing that the action was not commenced within 12 months "after inception of the loss." In opposition to the motion, plaintiff argued that there was a factual question as to whether defendant had waived the limitations clause by tendering payment on the claim and by repeatedly representing that the date of loss was October 15, 1990. Plaintiff also argued that the limitations period should run from the date that he discovered the loss, rather than from the date that the "cooking" occurred. The trial court rejected plaintiff's arguments and granted summary judgment in favor of defendant.

On plaintiff's appeal, the Court of Appeals reversed and remanded, holding that "there are genuine issues of material fact as to whether defendant intentionally relinquished its right to rely on the nonwaiver agreement and the 12-month limitation period." *Moore v. Mutual of Enumclaw Ins. Co., supra*, 113 Or App at 579. Defendant sought reconsideration, arguing that, as a matter of law under ORS 742.222, the statutorily required provisions of a standard fire insurance policy can be waived only by a written endorsement

to the policy. The Court of Appeals disagreed, holding that "ORS 742.222 does not preclude a non-written waiver by defendant of the time limitations clause in its policy, because the purported waiver does not extend the coverage of the policy." *Moore v. Mutual of Enumclaw Ins. Co., supra,* 116 Or App at 209.

As noted above, the insurance policy at issue in this case required that any action on the policy for recovery of a claim be commenced "within twelve months next after inception of the loss." For purposes of the motion for summary judgment, the parties stipulated that the methamphetamine "cooking" occurred in plaintiff's rental house more than one year before plaintiff commenced this action. To avoid an adverse summary judgment on the ground that his action was untimely, plaintiff advances two arguments. First, he contends that defendant waived the limitations clause. In the alternative, he argues that the limitations period did not begin until he discovered the loss. We address each of those arguments in turn.

## WAIVER

■ Waiver is the intentional relinquishment or abandonment of a known right or privilege. *State v. Hunter,* 316 Or 192, 201, 850 P2d 366 (1993); *Waterway Terminals v. P.S. Lord,* 242 Or 1, 26, 406 P2d 556 (1965). Whether a waiver has occurred depends on the particular circumstances of each case. *State v. Hunter, supra.* In this case, plaintiff contends that defendant waived the limitations clause of the policy by tendering payment on plaintiff's claim and by repeatedly representing that the date of loss was October 15, 1990, a date that would place the commencement of plaintiff's action well within the 12-month limitations period.

Defendant argues that it could not have waived the limitations clause in the manner that plaintiff alleges because of the statutorily required "nonwaiver" clause contained in the policy. That clause provided, in part, that "[n]o permission affecting this insurance shall exist, or waiver of any provision be valid, *unless granted herein or expressed in writing added hereto.*" (Emphasis supplied.) According to defendant, because there is no evidence of a written waiver of the limitations clause appended to the policy, no genuine

issue of material fact remains as to whether defendant waived that clause.

■ ■ Under general contract law, a party to a written contract can waive a provision of that contract by conduct or by oral representation, despite the existence of a nonwaiver clause. *See, e.g., Fisher v. Tiffin*, 275 Or 437, 441, 551 P2d 1061 (1976) (vendor's long-standing practice of accepting late payments constituted waiver of time provisions despite nonwaiver clause); 3A Corbin on Contracts § 763 at 531 (1960) ("An express provision in a written contract that no rescission or variation shall be valid unless it too is in writing is ineffective to invalidate a subsequent oral agreement to the contrary."). Plaintiff relies on that common law rule to argue that defendant could have waived the limitations clause without regard to the nonwaiver clause in the policy. Defendant contends, however, that ORS 742.222 has superseded the common law rule in cases involving standard fire insurance policies. According to defendant, the effect of ORS 742.222 is to prohibit the waiver of the provisions of a standard fire insurance policy by any means other than a writing appended to the policy.

Defendant's argument finds support in two previous decisions of this court. In *Oatman v. Bankers' Fire Relief Assn.*, 66 Or 388, 133 P 1183, 134 P 1033 (1913), the insured plaintiffs argued that the defendant insurer had waived a policy condition that required that the plaintiffs have sole ownership in fee simple of the property insured. That condition, however, was one of the standard fire insurance provisions that the legislature had enacted in 1907. Or Laws 1907, ch 137, § 1. Thus, the insurer was required by law to include that condition in the policy. Moreover, under the terms of the 1907 act, as incorporated in the policy, that condition was to apply "unless otherwise provided by agreement indorsed hereon or added hereto." In rejecting the plaintiffs' argument that the defendant's agent had waived the condition by certain actions, this court recognized that the 1907 act had had a significant impact on the common law rule of waiver:

> "Prior to 1907 Oregon had no law prescribing what policies of insurance should contain, and this court held, in several ·cases, that companies waived some conditions in policies by acts inconsistent with them.

"But this uniform policy act was enacted for the purpose of settling various questions in regard to [fire] insurance, on which the decisions of the courts of the different states were in hopeless conflict, and we believe that two objects in the enactment of this law were to create uniformity in the policies to be issued and to make the conditions set forth in the law and incorporated into the policies binding contracts on the companies and on the insured. It would be unreasonable to believe that no change was effected in the law of insurance by the enactment of this statute. * * *

"* * * * *

"The rules relevant to questions of waiver prior to the enactment of the standard policy law do not apply now. So far as this statute is inconsistent with the common law, it supersedes it.

"It is the duty of the courts to give effect to the statute, and not to nullify its requirements."

66 Or at 398-400.

The court followed its decision in *Oatman* four years later in *Boardman v. Insurance Co. of Pa.*, 84 Or 60, 164 P 558 (1917). In *Boardman,* the insured plaintiffs argued that the defendant insurer had waived the ownership condition of a fire insurance policy by failing to inquire about the ownership of the property when issuing the policy. The court rejected that argument, stating:

"[T]he statutory conditions cannot be waived except in the manner provided in the statute itself which must be in writing attached to or upon the face of the policy. The enactment mentioned gives the provisions of the policy the force of law * * *. Both parties to a policy must be held to know the law. The Allesina Case[5] and others like it [involving the common law rule of waiver] lose their importance and are not applicable to policies issued since the passage of the law. If the condition as to ownership of the property had been waived it could be evidenced only by writing conforming to the legal requirement * * *."

84 Or at 70.

---

[5] *Allesina v. London Ins. Co.*, 45 Or 441, 78 P 392 (1904) (holding that insurer waived mortgage clause in insurance policy by issuing policy and accepting premiums without inquiring about encumbrances on the insured property).

The rationale of the *Oatman* and *Boardman* decisions applies with equal force in the present case. By its terms, ORS 742.222 requires that a waiver of the kind that plaintiff claims here must be made in a writing on or appended to the policy in order to be valid. To recognize as valid a waiver made by any other means would nullify that requirement of the statute. We are not at liberty to do that. Consequently, we hold that, in cases involving fire insurance policies, the requirement of a written waiver imposed by ORS 742.222 supersedes the common law rule recognizing oral waiver and waiver by conduct.

In this case, the Court of Appeals, on reconsideration, appeared to recognize the impact of ORS 742.222 on the waiver issue in this case. The Court of Appeals concluded, however, that the requirement of a written waiver appended to the policy does not apply to a "time requirement" like the limitations clause at issue here. *Moore v. Mutual of Enumclaw Ins. Co., supra,* 116 Or App at 209. According to the Court of Appeals, the requirement of ORS 742.222 applies only to "coverage provisions." *Id.* at 208. That conclusion is wrong. The requirement of a written waiver contained in ORS 742.222 is not limited by its terms to policy provisions affecting the extent of coverage. On the contrary, ORS 742.222 applies to the waiver of "*any provision.*" (Emphasis supplied.) That broad statutory language encompasses the limitations clause at issue here.

■ A written waiver appended to the policy was necessary in this case to waive the limitations clause required by ORS 742.240. Plaintiff produced no evidence of a written waiver of the limitations clause appended to the policy.[6] Therefore, there is no genuine issue of material fact as to

---

[6] At oral argument before this court, plaintiff argued that there *is* evidence in the record of a written waiver appended to the policy. On February 21, 1991, after plaintiff had commenced his action but before defendant had filed its answer, defendant's counsel sent to plaintiff's counsel a certification of the coverages provided under the policy. That certification shows the date of loss as October 15, 1990. Plaintiff contends that the certification is sufficient to raise an issue of fact as to whether defendant waived the limitations clause in a writing appended to the policy. It is not. The certification is not appended to the insurance policy; it is simply attached to several documents that evidence the coverages of the policy. Therefore, even were we to conclude that a single reference to the date of loss could raise a factual issue regarding waiver, that reference does not appear in a writing appended to the insurance policy, as required by ORS 742.222.

whether defendant waived that clause.[7] The Court of Appeals was mistaken in concluding otherwise.

## DISCOVERY

■        We turn next to plaintiff's alternative argument for reversing the summary judgment in favor of defendant. Plaintiff urges this court to apply a "discovery rule" to the commencement of the 12-month limitations period required by ORS 742.240 (1989). According to plaintiff, the limitations period of the policy should not run from the date that the methamphetamine "cooking" took place, but rather from the date that he discovered that the "cooking" had occurred.

As noted previously, the insurance policy in this case, as required by ORS 742.240 (1989), provided that "[n]o suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity * * * unless commenced within twelve months next after *inception of the loss*." (Emphasis supplied.) Therefore, to determine when the 12-month limitation period began, we must determine when the "inception of the loss" occurred.

Normally, in interpreting a written contract, we attempt to determine the intent of the parties. ORS 42.240; *cf. Ryan v. Western Pac. Ins. Co.*, 242 Or 84, 90, 408 P2d 84 (1965) ("We have a policy of interpreting the intent of the parties to a contract according to the language of the contract."). Here, however, the language that we must interpret appears in the contract because the legislature requires it.

---

[7] Our holding in this case does not preclude the possibility that, in an appropriate case, an insurer may be *estopped* from asserting the limitations clause as a defense. As this court stated in *Mercer v. Germania Ins. Co.*, 88 Or 410, 413, 171 P 412 (1918):

"The distinction between waiver and estoppel as applied to an action on a contract of insurance is clearly pointed out by Mr. Chief Justice Moore in *Kimball v. Horticultural Fire Relief*, 79 Or. 133, 140, 141, (154 Pac. 578) [(1916)]. It was not the intention of the legislature when it enacted the statute defining the form of an insurance policy to relieve insurance companies from those estoppels *in pais* which are essential to fair dealing in the business world. Notwithstanding this legislation an insurer may still estop itself from relying on one or more of the defenses reserved to it in the standard policy[.]"

*See also Kabban v. Mackin*, 104 Or App 422, 429-31, 801 P2d 883 (1990) (distinguishing estoppel and waiver and holding that estoppel is not included under the term "waiver" in ORS 742.222). Estoppel is not an issue in this case.

Therefore, in determining the meaning of the phrase "inception of the loss," we must necessarily determine, if possible, the meaning intended by the legislature.

The Insurance Code does not define either the phrase "inception of the loss" or its pivotal elements, "inception" and "loss." Likewise, the individual policy at issue here does not define the phrase or its elements. This court has, in the past, however, addressed the intended meaning of that phrase.

In *Bell et al v. Quaker City F. & M. Ins. Co.*, 230 Or 615, 370 P2d 219 (1962), the insured plaintiffs commenced an action on their fire insurance policy 12 months and 64 days after the fire occurred. The policy in *Bell* contained the same limitations provision as the policy in the present case. Following a jury verdict in favor of the plaintiffs, the defendant insurer appealed, arguing that the trial court should have granted a motion for nonsuit on the ground that the action was not commenced within the required period. According to the defendant, the "inception of the loss" was the date of the fire. The plaintiffs argued, on the other hand, that the "inception of the loss" was not the date of the fire, but the date that the defendant insurer rejected the plaintiffs' claim under the policy — *i.e.*, the date that the plaintiffs' cause of action on the policy accrued.

To determine the meaning of the phrase "inception of the loss," this court looked to the history of that phrase. The court noted that an earlier version of the standard fire insurance policy had provided that an action must be commenced "within twelve months next after the fire." In 1945, however, the legislature had amended the standard policy to provide for commencement within 12 months "after inception of the loss." Or Laws 1945, ch 237, § 1. The court found "[t]he explanation of the reason for the amendment and its proper construction" in a New York case. *Bell et al v. Quaker City F. & M. Ins. Co., supra*, 230 Or at 622 (citing *Margulies v. Quaker City Fire & Marine Ins. Co.*, 276 App Div 695, 97 NYS2d 100 (1950)). In the *Margulies* case, the New York court had written:

> " 'Do the words "inception of the loss" mean the date of the happening of the loss or damage out of which the claim arose? It is clear from the history of the limitation provisions

in standard fire insurance policies that the use of the words "inception of the loss" was intended to refer to the occurrence of the event giving rise to the claim of liability and not to the accrual of liability. "Inception of the loss" was used in the 1943 standard fire insurance policy in the sense that "after the fire" was used in the standard fire insurance policy prior to 1943, except that it was to apply also to additional coverages by indorsements on the 1943 standard fire insurance policy.

" 'But the intention of the draftsmen of the standard fire insurance policy form does not alone suffice unless words are used that fairly and reasonably make that intention clear to the ordinary business man who purchases a policy of insurance. Although perhaps more apt language could have been used, it must be borne in mind that extended coverage authorized by the statute might deal with a wide variety of types of insurance and the draftsmen of the 1943 statutory form sought, by the language they employed, to have the period of limitation start from the occurrence of the casualty, the event or the situation, whatever it might be, that was insured against. We believe that the words "inception of the loss" convey that intention with reasonable clarity. "Inception" means the beginning, the commencement, the origination. "Inception of the loss" is equivalent to the occurrence of the casualty or event insured against. We hold, therefore, that the suit, not having been commenced within twelve months after the "inception of the loss," that is, the occurrence of the casualty insured against, the claim is barred.' "

230 Or at 623-24 (quoting *Margulies v. Quaker City Fire & Marine Ins. Co.*, *supra*, 97 NYS2d at 104).

The *Bell* court went on to conclude:

"The change in the Oregon statute came two years after the change in the New York statute and may be reasonably assumed to have been an adoption of that statute.[8] The decision of the appellate division of the New York Supreme Court in the *Margulies* case is entitled to great weight with this court not only because of that fact * * *, but also because of the authoritative explanation of the reason for the change and what was designed to be accomplished by it. Indeed, we

---

[8] Indeed, the standard fire insurance policy enacted by the Oregon legislature in 1945 *was* the 1943 New York Standard Fire Insurance Policy. ABA Section of Insurance Law, Annotation of the 1943 New York Standard Fire Insurance Policy at 4 (1953). By 1953, the New York standard policy had been enacted, adopted, approved, or permitted by every jurisdiction in the United States. *Id.* at 3.

think that the opinion in that case is practically conclusive of the question."

230 Or at 624-25.

Thus, in *Bell*, this court aligned itself with the majority of jurisdictions, including New York, which interpret the phrase "inception of the loss" in the standard fire insurance policy to mean "the occurrence of the casualty or event insured against." *See, e.g., Zuckerman v. Transamerica Ins. Co.*, 133 Ariz 139, 650 P2d 441 (1982) (Arizona law); *Closser v. Penn Mut. Fire Ins. Co.*, 457 A2d 1081 (Del Supr 1983) (Delaware law); *Sager Glove Corp. v. Aetna Ins. Co.*, 317 F2d 439 (7th Cir) (Illinois law), *cert den* 375 US 921 (1963); *Gremillion v. Travelers Indemnity Co.*, 256 La 974, 240 So 2d 727 (1970) (Louisiana law); *General State Authority v. Planet Ins. Co.*, 464 Pa 162, 346 A2d 265 (1975) (Pennsylvania law).

Plaintiff contends, however, that *Bell* is inapposite, because "[t]here was no discovery issue" in that case. Plaintiff urges this court to follow the "discovery rule" of *Berry v. Branner*, 245 Or 307, 421 P2d 996 (1966), and its progeny and to apply such a discovery rule in this case. We decline to do so for the following reasons.

In *Berry v. Branner, supra*, a case involving a foreign object left in a patient following surgery, this court held that the plaintiff's cause of action for medical malpractice "accrued at the time [the] plaintiff obtained knowledge, or reasonably should have obtained knowledge[,] of the tort committed upon her person by [the] defendant." 245 Or at 316. Later, this court extended the "discovery rule" to other negligence cases. *See, e.g., Frohs v. Greene*, 253 Or 1, 452 P2d 564 (1969) (medical malpractice; negligent diagnosis and treatment); *U.S. Nat'l Bank v. Davies*, 274 Or 663, 548 P2d 966 (1976) (legal malpractice); *Schiele v. Hobart Corporation*, 284 Or 483, 587 P2d 1010 (1978) (negligent infliction of occupational disease).

In arguing that the discovery rule applied in the foregoing cases should apply in this case as well, plaintiff ignores a crucial difference between those cases and the present one. In each of the foregoing cases, the issue was when the period provided by a statute of limitations began. Each case fell within the purview of ORS 12.010, which

provides: "Actions shall only be commenced within the periods prescribed in this chapter, *after the cause of action shall have accrued,* except where a different limitation is prescribed by statute." (Emphasis supplied.) In each case, this court concluded that the cause of action did not "accrue," and therefore the limitations period did not begin, until the plaintiff discovered or should have discovered that a tort had been committed and that the defendant had committed it. Thus, the statutory phrase stating that the limitations period began when "the cause of action * * * accrued" provided a basis for recognizing a discovery rule.

In this case, however, the applicable phrasing does not provide an equivalent basis for recognizing a discovery rule. Here, the limitations period began "after inception of the loss." In *Bell et al v. Quaker City F. & M. Ins. Co., supra,* this court rejected the argument that the phrase "inception of the loss" was intended to mean the accrual of the insured's cause of action. In effect, this court held in *Bell* that the phrase "after inception of the loss" in ORS 742.240 is not the equivalent of the phrase "after the cause of action shall have accrued" in ORS 12.010. *Berry* and its progeny do not aid plaintiff.

Plaintiff points out that this court has applied the discovery rule in several cases under the Oregon Tort Claims Act (OTCA), ORS 30.260 to 30.300, which, according to plaintiff, is "nearly identically worded" to ORS 742.240. Those decisions do not aid plaintiff, however.

In *Dowers Farms v. Lake County,* 288 Or 669, 607 P2d 1361 (1980), this court interpreted the limitations provision of the OTCA, which then provided that the limitations period for a tort action against a public body began "after the date of such accident or occurrence." ORS 30.275(3) (1969).[9] The court concluded that the limitations period ran from the date of the plaintiff's discovery of the injury. In explaining how that conclusion followed from the statutory language, the court first noted that, because of the interchangeable use of "accident," "occurrence," and "tort" in ORS 30.270, "the term 'such accident or occurrence' used in ORS 30.275(3)

---

[9] The limitations provision now appears in ORS 30.375(8) and provides that the limitations period begins "after the alleged loss or injury."

may be read as if it said 'the tort.' " 288 Or at 678. The court then stated:

> "We have in mind that before us is a cause allegedly arising from negligence of the defendant. * * * There is no legislative history to tell us that the legislature intended the courts to apply different rules with respect to fixing the point in time when the limitation period commences to run in causes of action for damages for negligence under the Tort Claims Act than in such causes outside the Act."

*Id.* at 680. Having established the link between tort actions outside the OTCA and tort actions under the OTCA, the court then held that the discovery rule recognized in *Berry* and the cases that followed it should apply to actions under the OTCA:

> "The logic of those cases requiring injury and a reasonable opportunity for discovery of the cause of the injury before the statute of limitations begins to run is equally applicable to the two year limitation period in ORS 30.275(3). To hold otherwise would impose an unreasonably narrow construction on the limitation period of the Tort Claims Act that would contravene both the policy of our case law on limitations periods and the legislative policy in Oregon allowing citizens to seek redress for torts committed by their governments."

*Id.* at 681.

Later that year, in *Adams v. Oregon State Police*, 289 Or 233, 611 P2d 1153 (1980), the court applied the same logic to the 180-day notice requirement in the OTCA, agreeing that "the 180 day notice period and the two year statute of limitations should commence to run from the same date." *Id.* at 238. Most recently, this court reaffirmed *Dowers Farms* and *Adams* in *Stephens v. Bohlman*, 314 Or 344, 838 P2d 600 (1992).

This court's decisions in *Dowers Farms, Adams*, and *Stephens* do not aid plaintiff, because the present case arises in a markedly different context than did those cases. This case does not involve a limitation on a tort action, as did the cases under the OTCA. Thus, where the court in those cases was able to draw on *Berry* and its progeny for guidance, we are not able to do so here. We have observed already that the basis for the application of the discovery rule that was available in

*Berry* — the concept of "accrual" of the claim — is not available here because the phrase "inception of the loss" does not correspond to accrual of the claim.

This court's decision in *Eldridge v. Eastmoreland General Hospital*, 307 Or 500, 769 P2d 775 (1989), is relevant. At issue in *Eldridge* was the three-year limitations period on a wrongful death action, which, under the applicable statute, began "after the occurrence of the injury causing the death of the decedent." ORS 30.020(1) (1973). The plaintiff in *Eldridge* argued that this court should apply a discovery rule as it had in *Dowers Farms* and *Adams* because of the similarity between the phrase "after occurrence of the injury causing the death of the decedent" and the phrase "after the date of such accident or occurrence." In rejecting that argument, this court stated: "These two phrases * * * cannot be compared so readily. Here, unlike in *Adams* and *Dowers Farms*, the legislative history makes it clear that the legislature had an intent contrary to the discovery rule when it enacted ORS 30.020(1)." 307 Or at 505.

Admittedly, there is no "clear" legislative history here to show that the legislature had an intent contrary to the discovery rule when it included the phrase "inception of the loss" in ORS 742.240. However, the history of that phrase, as discussed in *Bell et al v. Quaker City F. & M. Ins. Co., supra*, shows that no such rule was intended. More importantly, and even if we were writing on a clean slate, the phrase in question is not amenable to a discovery rule as a matter of English. As the Court of Appeals for the Seventh Circuit noted in *Sager Glove Corp. v. Aetna Ins. Co., supra*, 317 F2d at 441, "[t]he loss occurs and has its 'inception' whether or not the insured knows of it." *See also Zuckerman v. Transamerica Ins. Co., supra*, 133 Ariz at 145 ("the phrase 'inception of the loss' is not ambiguous and clearly denotes the time at which the loss occurs").

Because there is no genuine issue of material fact as to whether defendant waived the limitations clause of the policy, and because the 12-month limitations period commenced when the methamphetamine "cooking" occurred, this action was untimely. Summary judgment in favor of defendant was appropriate.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.