# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 35269

OREGON MUTUAL INSURANCE
COMPANY, an Oregon corporation,
individually and on behalf of its insureds Dale
and Kelly Bramlette, and Tananda Bramlette,

    Plaintiff-Appellant,

v.

FARM BUREAU MUTUAL INSURANCE
COMPANY OF IDAHO, an Idaho
corporation, and WESTERN COMMUNITY
INSURANCE COMPANY, an Idaho
corporation, and CHRIS KISER, an
individual, and LOWELL THOMPSON, an
individual,

    Defendants-Respondents.

Boise, August 2009 Term

2009 Opinion No. 121

Filed: October 8, 2009

Stephen W. Kenyon, Clerk

---

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Darla S. Williamson, District Judge.

District court decision on declaratory action, affirmed.

Lopez & Kelley, Boise, for appellant. Thomas H. Lopez argued.

Saetrum Law, Boise, for respondent. Rodney R. Saetrum argued.

---

BURDICK, Justice

This case arises from a declaratory action, between insurance companies, to determine whether a driver had permission to drive the owners' vehicle at the time of an automotive collision. Appellant Oregon Mutual Insurance Company (Oregon Mutual) appeals from the district court's decision, arguing that collateral estoppel precluded Respondents Farm Bureau Mutual Insurance Company of Idaho (Farm Bureau), Western Community Insurance Company (Western Community), and Chris Kiser (Kiser) (collectively Respondents) from litigating the issue of permissive use. Alternatively, Oregon Mutual argues that the court erred in finding that

1

defendant Lowell Thompson (Thompson) had permission to drive the owners' vehicle at the time of the accident. We affirm the district court's decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 21, 2006, Thompson and Kiser were involved in an automobile accident near Middleton, Idaho. At the time of the accident, Thompson was driving a 1989 Toyota Celica (the vehicle) owned by his girlfriend Tananda Bramlette (Tananda) and her mother Kelly Bramlette (Mrs. Bramlette). The vehicle was insured by Oregon Mutual on behalf of Tananda's father, Dale Bramlette (Mr. Bramlette). Under the policy, Tananda was the primary driver, and Tananda and Mrs. Bramlette were covered persons. The policy's liability coverage excludes "any person using a vehicle without a reasonable belief that the person is entitled to do so and that the person is using the vehicle within the scope of the permission granted" from being considered a "covered person." Kiser is insured by Farm Bureau and Western Community.

Prior to the accident, Thompson drove the vehicle on two occasions. First, in October 2005, Thompson drove the vehicle because Tananda had been drinking. Second, in December 2005, Tananda was not feeling well so Thompson drove the couple home.

In December 2005, or January 2006, the vehicle's engine stopped working, and Mr. Bramlette purchased a new engine for Thompson to install. Thompson had the keys to the vehicle while he performed the repairs. Mrs. Bramlette instructed Thompson that he was not to drive the vehicle. After Thompson installed the engine, the vehicle was still not running properly, so Mr. Bramlette and Tananda went to Al's Tire Center, Inc. (Al's Tire) in Garden City, where Thompson had recently begun working, to make arrangements for the vehicle to be tuned up. While at Al's Tire, Mr. Bramlette instructed Al Holl (Holl), the owner, that Thompson was not to drive the vehicle because Thompson had an invalid license.

The next day, January 21, 2006, Thompson started the vehicle, and Tananda drove the vehicle from their home to Al's Tire. Tananda dropped off the vehicle, and an employee of Al's Tire drove Tananda to work. Tananda did not tell Holl or any of his employees that Thompson was not to drive the vehicle.

According to Thompson, at around 7:00 p.m., Holl gave Thompson the keys to the vehicle and instructed him to pick Tananda up from work. Thompson claims he drove to Wal-Mart, where Tananda was outside on her break, and Tananda instructed him to buy gas for the vehicle and drive right back. Thompson purchased gas and then drove onto Highway 44 with the

intention of checking on a vehicle he owned, which was stranded near Middleton. While attempting to pass Kiser, who was making a left-hand turn off Highway 44, Thompson collided with Kiser's vehicle. Officer Jim Brown (Officer Brown) responded to the accident and cited Thompson for driving without privileges and failure to provide insurance. Tananda's account of the evening differs from Thompson's recollection. Tananda denies that Thompson visited her at her work and denies that she saw him or instructed him to buy gas. Rather, she testified that she expected another employee of Al's Tire to pick her up.

After the accident, Tananda gave Thompson her vehicle's insurance card for him to take to court. Additionally, according to Officer Brown, Tananda called shortly after the accident to inform him that the vehicle was insured. The charge against Thompson for failure to provide proof of insurance was subsequently dropped. Thompson later drove other vehicles owned by Tananda, though Tananda testified that she never gave Thompson express permission to do so.

In August and September 2006, Farm Bureau and Western Community filed arbitration claims against Oregon Mutual, seeking indemnification and reimbursement for benefits paid to Kiser for damages related to the accident. In November 2006, Oregon Mutual filed a declaratory action against Respondents and Thompson, seeking a judgment that Thompson did not have permission to drive the vehicle and, therefore, Oregon Mutual was not required to defend, indemnify, or otherwise provide coverage for Thompson for the claims arising from the accident. Oregon Mutual also sought a declaration that Kiser did not have any claims against Mr. Bramlette, Mrs. Bramlette, or Tananda because Thompson did not have permission, express or implied, to drive the vehicle.

Respondents filed an answer to Oregon Mutual's complaint in December 2006, but Thompson failed to respond. The district court subsequently entered an order of default and default judgment against Thompson on January 3, 2007. The default judgment stated:

> IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:
>
> Defendant Lowell Thompson did not have permission, express or implied, to drive the vehicle, and, as such, the Policy does not require Oregon Mutual to defend, indemnify or otherwise provide coverage for Defendant Lowell Thompson for all claims arising out of the January 21, 2006 accident . . . .

Shortly thereafter, Oregon Mutual moved for summary judgment against Respondents. Oregon Mutual argued that the default judgment against Thompson precluded him from testifying that he had permission to drive the vehicle for purposes of the summary judgment motion. However,

3

the district court denied the motion, finding that collateral estoppel did not apply to the issue of Thompson's coverage and Thompson's deposition testimony created a genuine issue of material fact regarding coverage.

A bench trial was held on January 7, 2008, on the issue of whether Thompson had permission to drive the vehicle. The district court heard the testimony of Tananda, Mrs. Bramlette, Officer Brown, and Kiser. Thompson failed to appear, and the transcript of his deposition was admitted into evidence. The district court issued its decision on February 26, 2008, and determined that Thompson had Tananda's permission to drive the vehicle and, therefore, the owner's insurance covered him while driving. Oregon Mutual timely filed this appeal.

## II. ANALYSIS

There are three issues on appeal: (1) whether the default judgment entered against Thompson barred Respondents from litigating the issue of Thompson's permission to drive the vehicle; (2) whether the district court erred in determining that Thompson had permission, express or implied, to drive the vehicle at the time of the accident; and (3) whether Respondents are entitled to attorney fees and costs on appeal. We will address each issue in turn.

### A. Standard of Review

"Review of a trial court's conclusions following a bench trial is limited to ascertaining whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law." *Borah v. McCandless*, 147 Idaho 73, ___, 205 P.3d 1209, 1213 (2009). We liberally construe the trial court's findings of fact in favor of the judgment entered, as it is within the province of the trial court to weigh conflicting evidence and testimony and judge the credibility of witnesses. *Id.* "The trial court's findings of fact will not be set aside unless clearly erroneous." *Shore v. Peterson*, 146 Idaho 903, 907, 204 P.3d 1114, 1118 (2009). "Thus, even if the evidence is conflicting, if the findings of fact are supported by substantial and competent evidence this Court will not disturb those findings on appeal." *Id.* However, we exercise free review over a trial court's conclusions of law. *Id.*

### B. *Res Judicata* and Collateral Estoppel

Oregon Mutual first contends that the default judgment entered against Thompson precluded Respondents from litigating the issue of Thompson's permission to drive the vehicle. Respondents counter that the default judgment applies only to Thompson and did not preclude

4

other defendants from litigating the issue of Thompson's permission to drive and coverage under the policy.

"*Res judicata* is comprised of claim preclusion (true *res judicata*) and issue preclusion (collateral estoppel)." *Stoddard v. Hagadone Corp.*, 147 Idaho 186, __, 207 P.3d 162, 166 (2009) (quoting *Hindmarsh v. Mock*, 138 Idaho 92, 94, 57 P.3d 803, 805 (2002)). Whether *res judicata* bars re-litigation is a question of law over which this Court exercises free review. *Waller v. State, Dep't of Health and Welfare*, 146 Idaho 234, 237, 192 P.3d 1058, 1061 (2008). "*Res judicata* is an affirmative defense and the party asserting it must prove all of the essential elements by a preponderance of the evidence." *Id.* (quoting *Ticor Title Co. v. Stanion*, 144 Idaho 119, 122, 157 P.3d 613, 616 (2007)).

The issue before this Court is whether the default judgment against Thompson precludes Respondents from litigating the issue of whether Thompson had permission to drive the vehicle. Five factors are required for collateral estoppel to bar re-litigation of an issue decided in an earlier proceeding:

> (1) the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case; (2) the issue decided in the prior litigation was identical to the issue presented in the present action; (3) the issue sought to be precluded was actually decided in the prior litigation; (4) there was a final judgment on the merits in the prior litigation; and (5) the party against whom the issue is asserted was a party or in privity with a party to the litigation.

*Waller*, 146 Idaho at 238, 192 P.3d at 1062 (quoting *Ticor Title Co.*, 144 Idaho at 124, 157 P.3d at 618). We find that the first factor, whether "the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case," was not met here.

The district court, in its decision denying Oregon Mutual's motion for summary judgment, determined that collateral estoppel did not bar Respondents from litigating the issue of permission. The district court relied in part on *Pocatello Industrial Park Co. v. Steel West, Inc.* for the proposition that collateral estoppel is only applicable where specific issues have actually been litigated and decided. 101 Idaho 783, 786, 621 P.2d 399, 402 (1980). Reasoning that Respondents never had the opportunity to fully litigate the issue of Thompson's coverage, the district court concluded that the default judgment against Thompson should not bar Respondents from litigating the issue of coverage under the policy.

5

On appeal, Oregon Mutual argues that Respondents had a full and fair opportunity to object to, or move to set aside, the default judgment within six months, pursuant to Idaho Rule of Civil Procedure 60(b). Oregon Mutual compares the default judgment in this case to the default judgment deemed to have decided the issue in *Waller*. In contrast, Respondents argue that *Waller* does not apply to this case because the default judgment here was entered against Thompson, not Respondents, and thus the default judgment applies only to Thompson. Furthermore, unlike the defendant in *Waller* who did not answer the complaint filed against him by the State, Respondents here filed an answer and asserted defenses in response to Oregon Mutual's complaint.

In *Waller*, this Court held that collateral estoppel applied to a prior default judgment against a party, prohibiting re-litigation of the issue in a subsequent action. 146 Idaho at 239, 192 P.3d at 1063. The plaintiff sought reimbursement from the State and an order removing his child support obligations, after a divorce decree found that he was not the biological father of his ex-wife's child and was not financially responsible for the child. *Id*. at 236, 192 P.3d at 1060. In a prior action by the State, default judgment was entered against plaintiff, establishing his child support obligations and ordering him to reimburse the State for the benefits provided on behalf of the child. *Id*. This Court upheld the district court's dismissal of the plaintiff's new action, finding that he was provided with a full and fair opportunity to litigate the issue of paternity in the first action and the issue of paternity was actually decided in the previous case. *Id*. at 238-39, 192 P.3d at 1062-63. The Court reasoned that, absent fraud or collusion, the principle of *res judicata* applies equally in cases of default judgment. *Id*. at 238, 192 P.3d at 1062. Oregon Mutual cites to this proposition to support its contention that Respondents already had a full and fair opportunity to litigate the issue of Thompson's permission.

However, Oregon Mutual incorrectly analogizes to *Waller*. As the default judgment in *Waller* barred the father from re-litigating the issue of paternity, the default judgment in this case similarly bars Thompson from re-litigating the issue of permission. By failing to file an answer or make an appearance, Thompson has waived his opportunity to litigate the issue of permission. That, however, is the extent of the application of *Waller* to this case. As between Oregon Mutual and Thompson, the issue of permission has been decided, but that determination is not binding on Respondents because Respondents were not a party to the default judgment. *See Idaho State Univ. v. Mitchell*, 97 Idaho 724, 731, 552 P.2d 776, 783 (1976).

It was not Respondents' obligation to object to, or move to set aside, the default judgment. Respondents had no grounds to object to the default judgment because Respondents' and Thompson's interests regarding whether permission existed were in conflict, so Respondents could not raise an objection on behalf of Thompson. Additionally, Respondents lacked standing to raise an I.R.C.P. 60(b) motion on behalf of Thompson's position because they were not the party against whom a final judgment was entered. Since Respondents were not the party against whom the earlier decision was asserted, they did not have a full and fair opportunity to litigate the issue of permission at the time default judgment was entered. In addition, there was no final judgment on the default judgment, thus it was not final until all other issues were decided and a final judgment was entered. Therefore, we affirm the district court's determination that Respondents were not precluded from litigating the issue of Thompson's permission to drive.

## C. Permissive Use

Oregon Mutual next argues that the district court erred as a matter of law in finding that Thompson was a permissive driver and in not explaining whether Thompson had express or implied permission at the time of the accident. Oregon Mutual also contends that the district court failed to analyze the scope of any permission that Thompson may have been granted. Respondents assert that substantial and competent evidence supports a finding of both express and implied permission. Because we find that express permission existed, we need not discuss the issue of implied permission.

Under Idaho law, the owner of a motor vehicle is liable when any person using or operating the vehicle "with the permission, expressed or implied, of the owner" operates that vehicle negligently. Idaho Code § 49-2417(1). Similarly, Oregon Mutual's liability coverage under the policy in this case excludes "any person using a vehicle without a reasonable belief that the person is entitled to do so and that the person is using the vehicle within the scope of the permission granted" from being considered a "covered person." "[T]he element of permission . . . is a question of fact to be proved at the trial," and it can be either express or implied. *Allied Group Ins. Co. v. Allstate Ins. Co.*, 123 Idaho 733, 736, 852 P.2d 485, 488 (1993) (quoting *Steele v. Nagel*, 89 Idaho 522, 529, 406 P.2d 805, 809 (1965)); *see also Eckels v. Johnson*, 96 Idaho 264, 265, 526 P.2d 1100, 1101 (1974). We affirm the district court's determination that Tananda granted Thompson permission to drive the vehicle.

7

## 1. Express permission

Oregon Mutual first contends that the testimony of Mrs. Bramlette and Tananda establishes that Thompson did not have express permission to drive the vehicle at the time of the accident. Additionally, Oregon Mutual argues that the district court improperly relied on Tananda's admission that she gave Thompson the vehicle's insurance card after the accident. Alternatively, Oregon Mutual argues that if Thompson's testimony is believed, the district court erred by not analyzing the scope of the express permission granted to Thompson to drive to the gas station. On the other hand, Respondents assert that Thompson was given express permission to drive the vehicle when Holl gave Thompson the keys to the vehicle, and when Tananda instructed Thompson to drive the vehicle to buy gas.

The district court heard all of the evidence during the bench trial and weighed the conflicting testimony of Mrs. Bramlette, Tananda, and Thompson. Though the evidence in the case is conflicting, the district court's findings are supported by substantial and competent evidence. First, the district court determined that Mrs. Bramlette did not give permission to Thompson to drive the vehicle, based upon her testimony that she specifically told Thompson he was not to drive the vehicle.

The district court then determined that Tananda did give Thompson permission based upon the testimony of Thompson and Tananda. The district court reasoned that Tananda and Thompson "were living together, they would be going home together, and it is realistic that he would be the one to pick her up at Wal-Mart. He described that she was outside on her break, smoking a cigarette when he arrived. This is a likely scenario." Although Tananda testified that Thompson did not stop at her work and she did not instruct him to buy gas, the district court found Thompson's version of the events more credible.

The district court also relied on Tananda's testimony that she gave Thompson her proof of insurance card to take to court and that she never expressly told Thompson he could not drive the vehicle. Officer Brown testified that Tananda placed a call to him following the accident, and he recounted the conversation at trial:

A. She identified herself as the girlfriend of the person who was driving the car, Lowell Thompson.

Q. And did she advise you as to whether or not there was insurance?

A. I believe she said that there was insurance.

8

Tananda testified that she never called Officer Brown, but she also testified that after the accident she gave Thompson the vehicle's insurance card to take to court:

> Q. Do you recall calling any officer?
>
> A. I've never talked to anybody about the case except Oregon Mutual.
>
> Q. Okay. Didn't call anybody at clerk's office, the prosecutor?
>
> A. No. I gave Lowell my insurance card out of the Celica when I cleaned it out. I never called anybody.
>
> Q. Why would you give Lowell your insurance card?
>
> A. Because I had insurance on the vehicle.
>
> Q. So you gave it to Lowell?
>
> A. Yes.
>
> Q. For him to take to court?
>
> A. Yes.

The district court reasoned that, by giving Thompson the insurance card, Tananda was implying to the court that Thompson had her permission to drive the vehicle when he was involved in the accident. Tananda then took an inconsistent position when she testified that Thompson did not have permission to drive the vehicle on the day of the accident. Tananda's testimony that she gave the insurance card to Thompson to take to court, and Officer Brown's testimony that Tananda told him Thompson was covered by her insurance, offer further evidence supporting the district court's decision. Even though the testimony is conflicting, the district court's findings are supported by substantial and competent evidence, so this Court will not disturb those findings on appeal. Thus, Tananda's instruction to Thompson to drive to the gas station and back constituted express permission for Thompson to drive the vehicle.

### 2. Scope of permission

Oregon Mutual further argues that the district court should have considered the scope of any express permission granted to Thompson and failed to do so. Oregon Mutual contends that, if Tananda gave Thompson express permission to drive to the gas station, Thompson exceeded the scope of that permission by driving to check on his car. Respondents counter that Tananda and Thompson were romantically involved and shared the same household, thus it was not necessary for Thompson to have precise permission at the exact moment of the accident when Tananda had already granted Thompson general permission to operate the vehicle.

9

In *Farm Bureau Mutual Insurance Co. of Idaho v. Hmelevsky*, 97 Idaho 46, 539 P.2d 598 (1975), the Court considered differing rules concerning the scope of general and specific permission to use a vehicle, as adopted in *Ryan v. Western Pacific Insurance Co.*, 408 P.2d 84 (Or. 1965):

> These have been catalogued as falling into one of three rules: (1) The 'strict' or 'conversion' rule, i.e., any deviation from the scope of the permission given ends coverage; (2) The 'minor deviation' rule, i.e., a minor deviation from the scope of the initial permission does not end coverage, but a major deviation does; and (3) The 'liberal' or 'initial permission' rule, i.e., the permittee is covered although the use is beyond the scope of the initial permission unless the use so far exceeds the initial permission that the permittee is akin to a thief or converter.

*Farm Bureau*, 97 Idaho at 49, 539 P.2d at 601 (quoting *Ryan*, 408 P.2d at 86). Though the Court in *Ryan* declined to adopt any of the three rules and instead adopted the intra-family relationship permission rule, we find the initial permission rule to be consistent with I.C. §§ 49-1212 and 2417, as well as Idaho public policy.

As described above, I.C. § 49-2417 defines liability for a motor vehicle owner to include the negligent operation of the vehicle by any person "with the permission, expressed or implied, of the owner." In addition, I.C. § 49-1212(1)(b) describes requirements for liability insurance policies to include insuring any person using the vehicle "with the express or implied permission of the named insured." Neither of these provisions create limitations based upon the scope of permission. This is consistent with the public policy goal of ensuring that the users of Idaho roadways are insured. Here, Tananda granted Thompson permission to drive the vehicle to purchase gasoline, and he only slightly exceeded the scope of that permission by driving in the direction of Middleton on Highway 44. Additionally, neither Tananda nor her parents took any actions to limit the scope of Thompson's permission to drive when it would have been apparent that Thompson had not simply driven to the gas station and back. They could have reported the vehicle as stolen following the accident, but did not, from which the trial court could infer there was implied permission to drive to where the accident took place. In addition, Tananda then provided proof of insurance for Thompson. Furthermore, Thompson did not so exceed the initial scope of permission as to be "akin to a thief or converter." Thus, under the initial permission rule, there is substantial and competent evidence that Thompson was acting within the scope of express permission at the time of the accident. Therefore, we affirm the district court's finding that Thompson had permission to drive the vehicle at the time of the accident.

**D. Attorney Fees and Costs on Appeal**

Respondents seek costs according to Idaho Appellate Rule 40, which provides that "[c]osts shall be allowed as a matter of course to the prevailing party unless otherwise provided by law or order of the Court." As Respondents are the prevailing party, they are awarded costs on appeal.

Respondents also request attorney fees on appeal pursuant to I.C. § 12-121, I.R.C.P. 54(e)(1), and I.A.R. 41. Idaho Appellate Rule 41 specifies the procedure for requesting an award of attorney fees on appeal, and I.C. § 12-121 allows an award of "reasonable attorney's fees to the prevailing party." Idaho Rule of Civil Procedure 54(e)(1) provides, "attorney fees under section 12-121, Idaho Code, may be awarded by the court only when it finds, from the facts presented to it, that the case was brought, pursued or defended frivolously, unreasonably or without foundation." Although Respondents prevail on this appeal, having reviewed the record, we cannot conclude that Oregon Mutual brought the appeal frivolously, unreasonably, or without foundation. Thus, we decline to award attorney fees to Respondents under I.C. § 12-121.

## IV. CONCLUSION

For the reasons set forth above, this Court affirms the district court's decision that Thompson was a permissive user of the vehicle and awards costs, but not attorney fees, to Respondents.

Chief Justice EISMANN and Justices W. JONES, HORTON and KIDWELL, PRO TEM, **CONCUR.**

11