### SHIRLEY BOYCE *v.* ALLSTATE INSURANCE COMPANY
### (15102)

Callahan, Borden, Berdon, Katz and Palmer, Js.

Argued December 7, 1995—decision released March 19, 1996

*Joel J. Rottner*, with whom were *Robyn L. Sondak* and *Susan L. Miller*, for the appellant (defendant).

*John Q. Gale*, with whom was *Kathleen Kowalyshyn*, for the appellee (plaintiff).

CALLAHAN, J. The plaintiff, Shirley Boyce,[1] brought suit against the defendant, the Allstate Insurance Company, to recover the proceeds of a fire insurance policy issued by the defendant. A jury found for the plaintiff on his complaint and on the defendant's counterclaim, and the trial court rendered judgment in accordance with the jury's verdicts.[2] The defendant subsequently moved to set aside the verdicts and to render judgment notwithstanding the verdicts on the ground that the plaintiff was precluded from recovering on the policy because he had not commenced this action within one

---

[1] The plaintiff is a male.

[2] The jury awarded the plaintiff $127,875, subject to a setoff of $20,520. The $20,520 represented the sum that the defendant had paid the plaintiff's mortgagee to satisfy the plaintiff's mortgage obligation.

year from the date of the fire loss he had suffered, as required by a policy provision.[3] The trial court denied the defendant's motion. In its memorandum of decision, the court incorporated its earlier ruling denying a motion by the defendant for summary judgment. In that ruling, the court had denied summary judgment for the defendant because it had determined that whether the defendant was equitably estopped from denying payment of the plaintiff's claim was a question of fact. The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

The defendant claims that because it did not expressly waive the statutorily mandated[4] requirement in the policy that the plaintiff initiate suit on the policy within one year from the date of his fire loss and because it was not estopped from enforcing the provisions of the policy, it was entitled to judgment notwithstanding the verdict. We agree that the defendant was not estopped, and reverse the judgment accordingly.

[3] In his motion, the defendant also requested that the trial court set aside the verdict on its counterclaim and direct a verdict in its favor, which the trial court denied. The defendant, however, has not appealed from this decision of the trial court. We, therefore, are not called upon to review any issues related to the disposition of the defendant's counterclaim.

[4] General Statutes § 38a-307 provides in relevant part: "The standard form of fire insurance policy of the state of Connecticut . . . shall be as follows . . .

"Waiver provisions. No permission affecting this insurance shall exist, or waiver of any provision be valid, unless granted herein or expressed in writing added hereto. No provision, stipulation or forfeiture shall be held to be waived by any requirement or proceeding on the part of this Company relating to appraisal or to any examination provided for herein. . . .

"Suit. No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months after inception of the loss. . . ."

The parties do not dispute that this language was set forth in the homeowner's policy issued by the defendant.

Certain facts are undisputed. The plaintiff was the owner of a three family house located at 539 Blue Hills Avenue in Hartford. The plaintiff resided in the first floor apartment, and rented the second and third floor apartments to tenants. On May 11, 1987, a fire substantially damaged the house. The plaintiff immediately notified the defendant, which provided fire insurance coverage on the premises pursuant to a homeowner's policy. The following day, a representative of the defendant conducted a brief investigation on the premises and gave the plaintiff a check for $10,000 as an advance payment for the fire damage. Shortly thereafter, however, the defendant learned that the plaintiff was suspected of having been involved in causing the fire and issued a stop payment order on the check.

On May 15, 1987, at the defendant's request, the plaintiff voluntarily signed a nonwaiver agreement. The agreement provided that the defendant's investigation into the cause of the fire did not operate as a waiver of either party's rights under the policy or as a waiver of any of the terms and conditions of the policy.[5] There-

---

[5] Specifically, the agreement provided in relevant part: "3. That any action taken by the Company in investigating the cause of loss, or investigating and ascertaining the amount of the actual cash value of the property or the amount of the loss and damage shall not waive or invalidate any of the terms or conditions of the policy, and shall not waive or invalidate any rights whatever or either of the parties to this Agreement.

"4. Neither the examination of the insured or of any other person, the examination of the books of account, bills, invoices or other vouchers of the insured or of any other person, the request of any other information, or the furnishing thereof, or the incurring of any trouble or expense by the insured shall waive or invalidate any of the terms and conditions of the policy or policies, or any defense thereunder.

"5. The intent of this Agreement is to preserve the rights of all parties hereto, and to permit an investigation of the cause of the loss, the investigation and ascertainment of the amount of actual cash value, or the amount of loss or damage, or any of them without regard to the liability of the Company.

"6. Execution of this Agreement shall not be taken as a waiver or surrender by the insured of any claims or rights under said policy and no representations have been made by the Company to induce the insured to execute

after, on June 16, 1987, as required by the policy, the plaintiff filed a proof of loss claim with the defendant, requesting that the defendant provide coverage for the fire damage to his house and its contents, and for the interruption of rental income.[6]

Subsequently, the plaintiff was arrested and charged with arson in the second degree in violation of General Statutes § 53a-112[7] in connection with the fire. The plaintiff pleaded nolo contendere to the charge and was found guilty in June, 1989.[8]

While the arson charge was pending against the plaintiff, the defendant requested by mail that, pursuant to the terms of the policy, the plaintiff submit to an examination under oath regarding his claim. The letter sent to the plaintiff also informed him that "[t]he noticing of your examination under oath in no way shall be construed to be a waiver by [the defendant] of its rights or defenses under the policy of insurance referred to above." Because of the pending criminal prosecution, the plaintiff, on the advice of counsel in his criminal

this Agreement, except as herein contained, and the insured affirms that he has read this Agreement and fully understands the terms and effect thereof."

[6] On July 14, 1987, the defendant notified the plaintiff that it was temporarily withholding any payment of the claim, pending an investigation into the cause of the fire. The investigation, it estimated, was to take approximately thirty days.

[7] General Statutes § 53a-112 provides: "Arson in the second degree: Class B felony. (a) A person is guilty of arson in the second degree when, with intent to destroy or damage a building, as defined in section 53a-100, (1) he starts a fire or causes an explosion and (A) such act subjects another person to a substantial risk of bodily injury; or (B) such fire or explosion was intended to conceal some other criminal act; or (C) such fire or explosion was intended to subject another person to a deprivation of a right, privilege or immunity secured or protected by the constitution or laws of this state or of the United States; or (2) a fire or explosion was caused by an individual hired by such person to start such fire or cause such explosion.

"(b) Arson in the second degree is a class B felony."

[8] In this case, the trial court did not allow the plaintiff's arson conviction to be brought to the jury's attention. It allowed the defendant's conviction of an unspecified "felony" to be used only for impeachment purposes.

case, did not appear for the scheduled examination. Counsel handling the plaintiff's fire insurance claim then contacted counsel for the defendant by telephone and informed him that the plaintiff would not give sworn testimony until the resolution of his pending criminal prosecution. In response, on January 18, 1988, the defendant's counsel wrote a letter to the plaintiff's counsel requesting that he be notified when the plaintiff would be available to be examined under oath. The plaintiff notified the defendant in September, 1989, and, again, in October, 1989, that he was available to be examined.

Thereafter, on November 16, 1989, the defendant notified the plaintiff that it was denying his claim.[9] Subsequently, on January 25, 1990, almost two years and eight months after the fire, the plaintiff brought this action, alleging that the defendant had breached the insurance policy by improperly denying coverage and claiming that he was entitled to compensatory and punitive damages. The defendant pleaded as a special defense that the plaintiff's action was precluded by the one year statutory limitation on suit provision in the policy. The defendant also counterclaimed, seeking reimbursement for the sums it had paid to the plaintiff's mortgagee,[10] and for attorney's fees and other costs it had expended investigating the plaintiff's claim. In response, the plaintiff asserted that the defendant should be estopped from raising the defense of the time limit on suit in the policy because, on the basis of the defendant's conduct, the plaintiff had reasonably believed that the defendant had

___

[9] The defendant informed the plaintiff that it was denying his claim because it was not timely under the terms of the insurance policy, and because he was responsible for the fire, had misrepresented the cause and origin of the loss and had increased the hazard.

[10] The insurance policy obligated the defendant to remit payment to the plaintiff's mortgagee for the amount due when the property sustained fire damage, irrespective of whether the plaintiff was involved in causing the fire. The defendant then was subrogated to the rights of the mortgagee.

waived its right to rely on that provision. The jury agreed with the plaintiff, and returned a verdict in his favor on both his claim for damages and the defendant's counterclaim. Following the jury's verdicts, the defendant moved to set aside the verdicts and for judgment notwithstanding the verdicts on the ground that there was insufficient evidence to support the plaintiff's contention that the defendant had impliedly waived, or should be estopped from asserting, the statutory limitation on suit contained in the policy. The trial court denied the motion, concluding that there was sufficient evidence to support the jury's determination that the defendant was estopped from asserting the time limitation.[11] This appeal followed.[12] We reverse in part.[13]

Our review of a trial court's decision on a motion to set aside a verdict and to direct a verdict in favor of the movant is well established. "In considering a motion to set aside the verdict, the court must determine whether the evidence, viewed in the light most favorable to the prevailing party, reasonably supports the jury's verdict. *Campbell* v. *Gould*, 194 Conn. 35, 41, 478

[11] In its memorandum of decision denying the defendant's motion, the trial court incorporated its earlier ruling in which it had denied the defendant's summary judgment motion, concluding that the statutory suit limitation provision did not foreclose the plaintiff's action. The trial court ruled that the doctrine of estoppel permitted the plaintiff to pursue his action despite the language of § 38a-307. Although we typically do not review the denial of a motion for summary judgment once a final judgment has been rendered; *Gurliacci* v. *Mayer*, 218 Conn. 531, 541 n.7, 590 A.2d 531 (1991); we will review it in this case to the extent that the trial court specifically incorporated this ruling into its decision to deny the defendant's motion to set aside the verdicts.

[12] The defendant also claims that the trial court erred by improperly: (1) precluding its attorney from explaining the reason for the absence of the nonwaiver language in the January 18, 1988 letter to the plaintiff; (2) limiting the cross-examination of the plaintiff regarding his arson conviction; and (3) instructing the jury that an adverse inference could be drawn from its failure to call a witness. Because of our resolution of the estoppel issue, we need not reach these other claims.

[13] See footnote 3.

A.2d 596 (1984)." (Internal quotation marks omitted.) *Childs* v. *Bainer*, 235 Conn. 107, 112, 663 A.2d 398 (1995). In reviewing the action of the trial court in denying a motion to set aside the verdict, "[i]t is the function of this court to determine whether the trial court abused its discretion . . . ." *Mather* v. *Griffin Hospital*, 207 Conn. 125, 139, 540 A.2d 666 (1988). "The verdict will be set aside and judgment directed only if we find that the jury could not reasonably and legally have reached [its] conclusion. . . ." (Internal quotation marks omitted.) *Fleming* v. *Garnett*, 231 Conn. 77, 83, 646 A.2d 1308 (1994). "If, on the evidence, the jury could reasonably have decided as [it] did, [the reviewing court] will not find error in the trial court's acceptance of the verdict . . . . However, it is the court's duty to set aside the verdict when it finds that it does manifest injustice, and is . . . palpably against the evidence. . . ." (Internal quotation marks omitted.) *Childs* v. *Bainer*, supra, 113.

The defendant claims that, because the plaintiff did not commence suit within one year of the date of loss as required by the policy and by § 38a-307 and because there was no express waiver of the time limitation as required by the statutory provision in the policy, the plaintiff's claim must fail as a matter of law. The policy provides in relevant part that "[n]o permission affecting this insurance shall exist, or waiver of any provision be valid, unless granted herein or expressed in writing added hereto." The defendant argues that the plaintiff's noncompliance with this provision alone is dispositive and prevents the plaintiff from recovering.[14] In the alter-

---

[14] In support of this claim, the defendant relies on *Moore* v. *Mutual of Enumclaw Ins. Co.*, 317 Ore. 235, 242–43, 855 P.2d 626 (1993), in which the Oregon Supreme Court addressed the applicability of the statutory requirement that any provision in a fire insurance policy could be waived only if expressed in writing and appended to the policy. In *Moore*, the court concluded that the express waiver requirement for the statutory suit limitation provision contained in a fire insurance policy supersedes the common law

native, the defendant argues that the plaintiff failed to carry his burden of demonstrating that the defendant, by its actions, was equitably estopped from relying on the statutory time limit for commencing suit on the policy.

The plaintiff does not claim that the defendant expressly waived any of the terms of the policy. He contends, instead, that the doctrine of equitable estoppel precludes the defendant from asserting the policy provision limiting the time to commence suit as a defense to this action. The plaintiff argues that the evidence adduced at trial supports the jury's conclusion that the defendant's actions induced him to believe that the statutory policy provision containing the one year limit on commencing suit would not be enforced.

We agree with the plaintiff that, despite the lack of evidence of an express waiver of the terms of the policy, he could pursue this action under the theory of equitable estoppel. We conclude, however, that the dearth of evidence of misleading conduct on the part of the defendant defeats the plaintiff's recovery based on estoppel, and that the trial court should have granted the defendant's motion to set aside the verdict and for judgment notwithstanding the verdict.

Estoppel has its roots in equity and stems from "the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting

rule recognizing oral waiver and waiver by conduct. Id.

The defendant's reliance on *Moore*, however, is misplaced. The question of equitable estoppel was not an issue before the court in that case. In fact, the court expressly stated that "[o]ur holding in this case does not preclude the possibility that, in an appropriate case, an insurer may be estopped from asserting the limitations clause as a defense." Id., 243 n.7. We believe this is an appropriate case and, therefore, conclude that we must determine whether the evidence was sufficient to support the jury's conclusion that estoppel precluded the defendant's reliance on the limitation clause as a defense.

rights which might perhaps have otherwise existed . . . as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse. 3 Pomeroy, Equity Jurisprudence (5th Ed. 1941) § 804, p. 189; 28 Am. Jur. 2d, Estoppel and Waiver § 76; accord *Spear-Newman, Inc.* v. *Modern Floors Corporation,* 149 Conn. 88, 91, 175 A.2d 565 (1961); *Tradesmens National Bank of New Haven* v. *Minor,* 122 Conn. 419, 424, 190 A. 270 (1937); *MacKay* v. *Aetna Life Ins. Co.,* 118 Conn. 538, 548, 173 A. 783 (1934)." (Internal quotation marks omitted.) *Emerick* v. *Emerick,* 28 Conn. App. 794, 802–803, 613 A.2d 1351, cert. denied, 224 Conn. 915, 617 A.2d 171 (1992). "The modern estoppel in pais is of equitable origin, though of equal application in courts of law. It is much more than a rule of evidence. It establishes rights; it determines remedies. An equitable estoppel does not so much shut out the truth as let in the truth, and the whole truth. Its office is . . . to show what equity and good conscience require, under the particular circumstances of the case . . . . *Lebowitz* v. *McPike,* 157 Conn. 235, 243, 253 A.2d 1 [1968]." (Internal quotation marks omitted.) *Novella* v. *Hartford Accident & Indemnity Co.,* 163 Conn. 552, 564, 316 A.2d 394 (1972).

It would be unjust to foreclose an insured's ability to assert an estoppel theory because the insured has not obtained a written waiver when other actions of the insurance carrier lead the insured reasonably to believe that the statutory limitation on suit provision or any other provision of an insurance policy will not be enforced. See, e.g., *Meadows* v. *Employers' Fire Ins. Co.,* 171 W. Va. 337, 341, 298 S.E.2d 874 (1982) (recognizing one year statutory suit limitation provision contained in fire insurance policy will be extended if insurance company by negotiations or other actions induces insured to delay filing suit). "This court [does

not intend] to advance the cause of the unscrupulous"; *Habetz* v. *Condon*, 224 Conn. 231, 240, 618 A.2d 501 (1992); and, therefore, we decline to adopt the defendant's argument that the legislatively mandated nonwaiver provision precludes an insured from asserting equitable estoppel whenever the insured fails to obtain a written waiver, no matter what the insurer does or does not do that might mislead the insured. Accordingly, we conclude that "the principle that no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong"; *Novella* v. *Hartford Accident & Indemnity Co.*, supra, 163 Conn. 565; trumps the defendant's position that the nonwaiver provision of § 38a-307 precludes the plaintiff's estoppel argument.

We turn now to the issue of whether the evidence adduced at trial was sufficient to support the jury's conclusion that the doctrine of equitable estoppel precluded the defendant from enforcing the statutory one year limitation on suit provision in the policy. We conclude that the evidence was insufficient to support the jury's verdict. "We [have] recognized that estoppel always requires proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. *Bozzi* v. *Bozzi*, 177 Conn. 232, 242, 413 A.2d 834 (1979); *Dupuis* v. *Submarine Base Credit Union, Inc.*, 170 Conn. 344, 353, 365 A.2d 1093 (1976); *Pet Care Products, Inc.* v. *Barnett*, 150 Conn. 42, 53–54, 184 A.2d 797 (1962). *Zoning Commission* v. *Lescynski*, [188 Conn. 724, 731, 453 A.2d 1144 (1982)]. . . . 'Moreover, it is the burden of the person claiming the estoppel to show that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things

but had no convenient means of acquiring that knowledge.' . . . *Dupuis* v. *Submarine Base Credit Union, Inc.*, supra, 353." *Bauer* v. *Waste Management of Connecticut, Inc.*, 234 Conn. 221, 246–47, 662 A.2d 1179 (1995).

Viewing the evidence produced at trial in the light most favorable to the plaintiff, we conclude that the evidence fails to indicate any misleading conduct by the defendant on which the plaintiff could have reasonably relied to support his belief that the statutory suit limitation provision would not be enforced. See *Lunn* v. *Tokeneke Assn., Inc.*, 227 Conn. 601, 607, 630 A.2d 1335 (1993) (equitable estoppel requires misleading conduct by one party resulting in prejudice to other). In fact, the plaintiff's signing of the nonwaiver agreement, although not dispositive of the issue, suggests the opposite result. The nonwaiver agreement made the plaintiff aware that the defendant intended to hold him to the terms of the policy while investigating the merits of his claim. In addition, the defendant's stop payment order on the initial check it issued to the plaintiff should have put him on notice that the defendant had serious questions concerning its obligation to provide coverage. Moreover, the defendant's letter, requesting that the plaintiff submit to an examination under oath, contained nonwaiver language and reiterated the defendant's intention to enforce the terms and conditions of the policy.

The plaintiff relies principally on the absence of language indicating nonwaiver in the defendant's January 18, 1988 letter asking him to advise the defendant when he would be willing and able to be deposed. We cannot read the mere absence of nonwaiver language in that letter as conduct of the defendant that would induce the plaintiff or any reasonable claimant to believe that the limitation period in the policy had been waived. We believe it would be palpably unfair to allow the plaintiff to use the defendant's acquiescence in his request to

postpone his examination under oath to invoke successfully the doctrine of equitable estoppel against the defendant when there is no language in that letter even hinting at a waiver of any provision of the policy. Indeed, the plaintiff's claim that the absence of any nonwaiver language begets an estoppel or an implied waiver contradicts the long-standing principle that " 'silence will not operate as [an] estoppel absent a duty to speak.' " *John T. Brady & Co.* v. *Stamford,* 220 Conn. 432, 444, 599 A.2d 370 (1991). In light of the defendant's prior communications to the plaintiff in which it had repeatedly manifested its intention not to waive any of the provisions of the policy, the plaintiff should have been fully cognizant of the defendant's intention to enforce the policy terms. Moreover, under the circumstances, due diligence at least required that the plaintiff make an inquiry of the defendant before assuming that the defendant did not intend to enforce the terms of its policy. *Bauer* v. *Waste Management of Connecticut, Inc.,* supra, 234 Conn. 246–47.

The plaintiff also contends that the defendant should be estopped from enforcing the time limit in the policy because it did not inquire whether the plaintiff possessed a copy of the policy, and did not offer to send him one or to indicate more explicitly to him that it intended to rely on the statutorily mandated provision in question. We disagree. The defendant was under no duty to ask whether the plaintiff had a copy of the policy, to submit a copy of the policy to the plaintiff or to inform him further of its intentions to rely on the limitation provision as a defense to coverage. See *Hanover Ins. Co.* v. *Fireman's Fund Ins. Co.,* 217 Conn. 340, 350, 586 A.2d 567 (1991) (no duty on behalf of insurance company to inform other party of its intention to rely on one year statute of limitation clause in policy). In sum, " '[t]he record is persuasive that this is a case not of the defendants' lulling the plaintiff into a sense

of false security but of the latter's sleeping on his rights.' " Id.[15] We conclude that the evidence was insufficient to support the plaintiff's recovery on an estoppel theory.

The judgment is reversed in part and the case is remanded with direction to render judgment for the defendant on the plaintiff's complaint.

In this opinion the other justices concurred.

---

[15] The plaintiff also claims that the defendant's remitting payment to the plaintiff's mortgagee provides additional support for his estoppel argument. We find this assertion unpersuasive because the defendant was obligated to pay the plaintiff's mortgagee, pursuant to the terms of the policy, whenever damage to the property had occurred. That obligatory conduct by the defendant does not serve to bolster the plaintiff's claim of estoppel.