[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case involves the right of a purchaser to declare a purchase contract void and the extent or scope of a liquidated damages clause in that contract. The premises are located on Smoke Hill Road in the city of Stamford and consist of lots # 3 and #4 on Map # 11378. The plaintiff, Abe Webski, alleges in the first count of his complaint that he signed a contract on or about July 8, 1993, to purchase the subject premises from the owners, the defendants, John Czarnecki and Henry Czarnecki, and paid a deposit of $27,500, representing 10% of the purchase price of $275,000. The plaintiff further alleges that the contract provided that the plaintiff had the right to declare the contract null and void "for any reason whatsoever" so long as he notified the defendant by August 9, 1993. The plaintiff contends that he declared the contract null and void on August 6, 1993, but that defendants refused to return his down payment. In the second count of his complaint, the plaintiff alleges that the contract violated the Statute of Frauds because the purchase money mortgage that the defendants agreed to provide him as part of the purchase price did not contain a maturity date. In the third count, the plaintiff contends that the defendants as sellers made false misrepresentations that the property to be conveyed consisted of buildable lots. The plaintiff seeks in this action to recover his deposit as an integral part of his demand to rescind the contract. Barco Auto Leasing Corp. v. House,202 Conn. 106, 113, 520 A.2d 162 (1987).
The defendants filed an answer, denying the material allegations of the complaint, a special defense and a three-count counterclaim. The special defense contends that the Statute of Frauds is not applicable by reason of the doctrines of part performance and estoppel because the plaintiff took possession of the subject premises in order to begin construction of homes on the property.
In the first count of their counterclaim, the defendants allege that the plaintiff breached the contract by not paying the purchase price and by not closing on August 9, 1993, as scheduled. The defendants also claim that they have the right to retain the down payment as liquidated damages. In the second count, the defendants contend that they delivered possession of their property to the plaintiff after receiving assurances from him that the sale was a "done deal," and that thereafter the plaintiff destroyed fifty trees in violation of General Statutes § 52-560,[1] thus diminishing the market value of the subject property. In the third count of the counterclaim, the defendants CT Page 613 allege that the city's Environmental Protection Board (EPB) ordered the defendants to restore, at considerable cost, the fifty trees the plaintiff cut down, including engineering, drainage and roads.
This case was referred to Attorney David Albert, an attorney trial referee, in accordance with General Statutes § 52-434 (a) and Practice Book § 428 et seq. The referee conducted a trial and then submitted a report finding the following facts: (1) the purchase agreement provided that the defendants, as sellers or owners of the premises at Smoke Hill Drive, could retain the 10 percent deposit if the purchaser failed to perform his obligations under the contract;[2] (2) the contract also provided that the plaintiff as purchaser could cancel the contract prior to August 9, 1993, for any reason whatsoever;[3]
(3) after the contract was signed, the plaintiff requested permission to enter upon the premises to start clearing trees for house sites, and the defendants gave him permission to do so after the plaintiff assured them that the sale was a "done deal;" (4) the plaintiff removed trees from the subject premises without obtaining prior approval from the EPB, and the EPB ultimately issued a cease and desist order to the plaintiff prohibiting any further cutting of trees; (5) the plaintiff cut down trees only in the area of house sites; (6) the plaintiff sent a letter to the defendants' attorney on August 6, 1993, declaring that the contract was null and void because of the EPB's requirements regarding construction of roads and drainage; (7) the EPB required the defendants to restore the wooded areas outside of the sites where houses were to be constructed; (8) insufficient evidence was introduced at the trial regarding the cost to the defendants of restoring the premises in accordance with the EPB's requirements; (9) the contract provided that the proposed purchase money mortgage would contain the "usual clauses" including a "default" clause if the premises were sold, transferred or conveyed, or if the property became encumbered by a lien, and the proposed mortgage was also to "contain the usual clauses contained in Connecticut 1 to 4 family, FNMA/FHLMC Uniform Instruments;" (10) the plaintiff, Abe Webski, did not testify at the trial although there was no evidence that he was physically or mentally incapable of doing so; and (11) after the plaintiff declined to purchase the property, the defendants were unable to find a buyer for a considerable time.
The attorney trial referee concluded, on the basis of the above findings of fact, that: (1) the purchase money mortgage CT Page 614 clause did not violate the Statute of Frauds because the maturity date was neither ambiguous nor indefinite as to time; (2) the phrase "any reason" in the cancellation clause required that there be a specific reason connected with the requirements of local municipal agencies, not "no reason or a spurious reason;" (3) the conduct of the plaintiff in assuring the defendants that the purchase was a "done deal" and then in entering upon the subject premises and cutting down whichever trees he wanted indicated that the plaintiff had decided to purchase the subject premises, and had waived his right to cancel the contract, and/or was "estopped" from doing so; (4) the plaintiff Abe Webski's failure to testify justified an inference, in accordance withSecondino v. New Haven, 147 Conn. 672, 677 (1961), that the plaintiff's testimony would not have been favorable to his cause; and (5) the liquidated damages clause was neither a penalty nor a forfeiture clause because it represented an effort to determine the extent of damages in the event of a breach where there was uncertainty as to the amount of actual damages, and because the amount of liquidated damages was reasonable.
Both the plaintiff and the defendants, pursuant to Practice Book § 438, moved to correct the referee's report. The plaintiff sought corrections to add that: (1) the proposed purchase money mortgage lacked a specific, fixed maturity date, and was therefore void under the Statute of Frauds; (2) the defendants failed to introduce sufficient evidence of waiver or estoppel; and (3) a Secondino inference should not have been drawn because the plaintiff, Abe Webski, had been ordered by his doctor not to testify, and because the counsel for the defendants was aware of the problem and did not request that an unfavorable inference be drawn.
The defendants sought corrections to add to the referee's report that: (1) the plaintiff cleared a vast number of trees, shrubs and ground cover from the subject premises without the EPB's approval, and the clearing by the plaintiff was not limited to house sites; (2) the cost to implement the restoration required by the EPB, and necessitated by the plaintiff's conduct, was approximately $25,000; (3) the defendants spent over $10,000 for the replanting of Lot #3; and (4) the defendants were entitled to recover from the plaintiff $62,700 under General Statutes § 52-560 and $27,000 for the restoration of property to a wooded state.
In response to the motion to correct filed by the plaintiff, CT Page 615 the attorney trial referee declined to change his report or recommendation that judgment enter, on the complaint, for the defendants to retain the plaintiff's down payment. The referee reiterated his prior conclusions that the maturity date of the purchase money mortgage can be determined by "designated events" which "trigger" payment requirements, and that a specific calendar date is not required. Regarding his determination of waiver and estoppel, the referee pointed out that the plaintiff, after receiving permission to enter upon the land prior to closing, chose the location of the house sites and cut down trees without any input from the defendants. The referee also stated that, although a Secondino inference was justified, "even without this inference" the evidence pointed to the plaintiff's waiving his right to rescind the purchase agreement, and/or being estopped from attempting to void the contract.
In response to the motion to correct filed by the defendants, the referee declined to change his recommendations, and noted that the defendants were attempting to substitute their version of the facts for those found by the referee.
Both the plaintiff and the defendants then filed exceptions to the referee's report pursuant to Practice Book § 439. The exceptions filed by the plaintiff repeat the claims asserted in his motion to correct regarding the Statute of Frauds, waiver and estoppel and the Secondino inference. The defendants contend that the plaintiff is liable to them for multiple damages pursuant to General Statutes § 52-560 for cutting down a greater number of trees on their property than was necessary to develop house sites.
As to this court's scope of review of an attorney trial referee's report regarding the facts of a given case, the Supreme Court recently reiterated in Elgar v. Elgar, 238 Conn. 839,848-49, 679 A.2d 937 (1996), that "[a] reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. See Practice Book § 443 . . . . The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous . . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses . . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence CT Page 616 to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) See also Romano v. Derby, 42 Conn. App. 624, 626,681 A.2d 387 (1996) ("[t]he trial court, as the reviewing authority, may render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee.").
Thus, according to Elgar v. Elgar, supra, 238 Conn. 845, this court has two tasks to perform in reviewing an attorney trial referee's report. The first is to determine whether the "referee's findings of fact were supported by the evidence." Id. The second task is to ascertain whether "the conclusions drawn therefrom were legally and logically correct." Id. As stated inRomano v. Derby, supra, 42 Conn. App. 628, "[a]fter reviewing the transcript and testimony of the hearing, the trial court concluded that a sufficient basis existed in the evidence to support the attorney trial referee's findings and therefore concluded that judgment should be rendered for the defendant. We will not overturn these conclusions unless they are legally or logically inconsistent with the facts found."
Regarding the first task of determining whether there is support in the record for the factual findings of the referee, the file discloses that, although the parties filed exceptions to the referee's report pursuant to Practice Book § 439, they did not file with the exceptions a transcript for any of the four days of trial as required by Practice Book § 439. Thus, it is impossible for the court to ascertain whether there is support in the record for the referee's findings of fact. When a trial transcript is not furnished to the court, it can be assumed that such a transcript is not "crucial" to the evaluation of the referee's report. Beizer v. Goepfert, 28 Conn. App. 693, 706-07,613 A.2d 1336, cert. denied, 224 Conn. 901, 615 A.2d 1049 (1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1416, 122 L.Ed.2d 786
(1993).
It follows therefore that the factual findings by the referee must stand uncorrected. Practice Book § 439. "[F]iling exceptions seeking corrections by the court preserves the excepting party's rights in this regard . . . . A party's failure to conform to this procedure limits the reviewing court to determining whether the subordinate facts found by the attorney referee were sufficient to support the referee's ultimate factual conclusions." Blessings Corporation v. Carolton Chronic CT Page 617Convalescent Hospital, Inc., 7 Conn. App. 364, 367, 508 A.2d 829
(1986).
Furthermore, neither party filed any objections to the referee's report as authorized by Practice Book § 440. Such failure means that the parties have waived any right to claim that the referee's conclusions were not properly reached on the basis of the subordinate facts that were found, or that there were errors in the rulings on the admission of evidence or in other rulings. Rostenberg-Doern Co. v. Weiner, 17 Conn. App. 294,301-02, 552 A.2d 827 (1989). In Rostenberg-Doern, where a party did not file objections to the referee's report, the court said that the failure to "follow the appropriate procedural guidelines" resulted in the court's being "precluded from reviewing [the plaintiff's] claim." Id., 302.
Since the referee's findings of fact must stand unchallenged because of the absence of valid and proper exceptions, the remaining issue concerns whether the referee's conclusions follow legally and logically from the underlying facts. This determination is required because a reviewing court is obliged to consider whether "the conclusions reached were in accordance with the applicable law." Thermoglaze, Inc. v. Morningside Gardens,Co., 23 Conn. App. 741, 746, 583 A.2d 1331, cert. denied,217 Conn. 811, 587 A.2d 153 (1991). See also Practice Book § 443 which provides in pertinent part that "[t]he court shall render such judgment as the law requires upon the facts in the report . . . ."
The referee determined that the purchase contract was not voided by the lack of a specific, calendar date for maturity in the proposed purchase money mortgage. The maturity date of the mortgage was fixed by a number of events which were, according to the referee, easily ascertainable, sale, hypothecation, transfer, etc. Even if the purchase money mortgage clause is "arguably vulnerable" to the Statute of Frauds because of its "open-ended" nature, the referee concluded that, in this present case, the plaintiff had partly performed the contract by entering upon the premises and starting work before the closing, and had therefore waived and/or was estopped from repudiating the contract. Maturov. Scranton, 177 Conn. 569, 571, 418 A.2d 928 (1979).
Waiver has been defined as the "intentional relinquishment or abandonment of a known right or privilege." City of New Haven v.Local 884, Council 4, 237 Conn. 378, 385, 677 A.2d 1350 (1996). CT Page 618 "Estoppel has its roots in equity and stems from the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed . . . as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse. . . . The modern estoppel in pais is of equitable origin, though of equal application in courts of law. It is much more than a rule of evidence. It establishes rights; it determines remedies. An equitable estoppel does not so much shut out the truth as let in the truth, and the whole truth. Its office is . . . to show what equity and good conscience require, under the particular circumstances of the case. . . ." (Internal citations omitted; internal quotation marks omitted.) Boyce v. Allstate Insurance, 236 Conn. 375,383-84, 673 A.2d 77 (1996).
The conclusion of waiver and estoppel is a factual one. "Our review of the trial court's determination is guided by the principle that, because waiver and estoppel are questions of fact . . . we will not disturb the trial court's findings unless they are clearly erroneous." (Internal citations omitted; internal quotation marks omitted.) City of New Haven v. Local884, Council 4, supra, 237 Conn. 388. The referee points out that the plaintiff entered upon the premises before the closing, after assuring the defendants that they had a "done deal." The plaintiff then proceeded to clear a good number of trees without the defendants' input or permission. The conclusions of waiver and estoppel follow legally and logically from these factual findings.
The applicable law regarding the enforceability of a liquidated damage clause was set forth in Hansen Development Co.v. East Great Plains Shopping Center, Inc., 195 Conn. 60, 64-65,485 A.2d 1296 (1985). "The requisite three conditions are that: (1) the damage which was to be expected as a result of a breach of contract was uncertain in amount or difficult to prove; (2) there was an intent on the part of the parties to liquidate damages in advance; and (3) the amount stipulated was reasonable." Id. The referee found that the damage clause in the contract in this present case met all three conditions and should therefore be enforced. This conclusion also follows legally and logically from the referee's factual findings and should not be disturbed.
As to the defendants' claim for actual damages, it is "well CT Page 619 settled that a seller may not retain a stipulated sum as liquidated damages and also recover actual damages." HansenDevelopment Co. v. East Great Plains Shopping Center, Inc., supra, 195 Conn. 64; see also Sanitary Services Corp. v.Grainfield Village Association, Inc., 36 Conn. App. 395, 398,651 A.2d 269 (1994), quoting Vines v. Orchard Hills, Inc., 181 Conn. 501,511, 435 A.2d 1022 (1980)("liquidated damages provisions are `private agreements to supplant judicially determined remedies for breach of contract.'"). In view of the referee's finding that the liquidated damages clause was intended to fix damages in case of a breach of contract, his conclusion that the defendants are not entitled to actual damages should not be overturned.
Therefore, based on the standard of review in Elgar v. Elgar, supra, 238 Conn. 848, the court finds that the referee's recommendations are not illegal or illogical. To the contrary, in the words of Practice Book § 440, his recommendations were "properly reached on the basis of the subordinate facts found." No material error in the referee's report has been found, nor has any other sufficient reason for rendering the report unacceptable. See Practice Book § 443.
Accordingly, as to the plaintiff's complaint, judgment is entered in favor of the defendants to retain the $27,500 deposit because of the finding of waiver and/or estoppel. Judgment is also rendered in favor of the plaintiff with respect to the defendants' counterclaim because of the existence of a valid liquidated damages clause. Costs shall not be taxed.
So Ordered.
Dated at Stamford, Connecticut, this 9th day of January, 1997.
William B. Lewis, Judge