Fecteau, J.
This is an action wherein the plaintiff alleges detrimental reliance on a statement by the defendant’s claim representative that “underinsured motorist” coverage was available to her in connection with the facts of the underlying personal injury accident, later learning that such was not the case. This information, she contends, led her to give a release to her tortfeasor, thus foreclosing her rights to enforce the liability of and seek a judgment in excess of the tortfeasor’s liability insurance. The defendant contends that any reliance upon this erroneous statement of coverage confirmation was not reasonable and, even if it were, the plaintiff suffered no actual harm. Additionally, the plaintiff alleges a G.L.c. 93A violation in these facts which the defendant says does not apply, as the substantive law of the State of Connecticut applies and does not allow for such a cause of action.
The matter came on for trial before me, sitting without jury, as the parties waived their rights thereto, on March 31, 1999. Upon consideration of the credible evidence, I make the following findings of fact and rulings of law.
FINDINGS OF FACT
1. On September 29, 1995, the plaintiff was injured in a motor vehicle accident in the Bondsville section of Palmer, Massachusetts, under circumstances that would result in a finding that the other driver, Mavis Sedlak, was at fault in the accident. Sedlak had a policy of automobile liability insurance with Arbella Mutual Insurance Company with bodily injury limits of $20,000.00 per claimant.
2. On said date, the plaintiff owned, in addition to the motorcycle which she was operating at the time of the accident, which was “garaged” in Massachusetts and insured under a Massachusetts automobile insurance policy with the Progressive Insurance Company, a jeep that was garaged in Connecticut and insured under a Connecticut automobile insurance policy with the defendant. Both of her policies had underinsured motorist benefits; the policy covering the motorcycle had underinsured limits of $20,000.00 per claimant and that for the jeep had $100,000.00 in underinsured motorist coverage limits per claimant.
3. The plaintiff retained counsel to represent her in connection with her personal injury claim. On October 19, 1995, he sent a letter of representation to the defendant that included a notice of her intent to make a claim on her underinsured motorist coverage.
4. On November 6th and 28th, 1995, he wrote to the defendant’s claim representative, experienced in the handling of bodily injury claims including under-insured claims, requesting confirmation that the un-derinsured coverage that the plaintiff had with her policy of insurance with the defendant applied to the facts of this accident claim.
5. Plaintiffs counsel was experienced in the handling of personal injury claims and had represented many claimants in pursuing claims against underin-sured motorist insurance coverage, although not many, if any, on a Connecticut insurance policy. At all times relevant to the facts herein, he neither had in his possession a copy of the policy, received from his client a copy of any part of her policy other than the coverage selection page nor requested a copy of the policy from the defendant.
6. The policy issued by the defendant contained the following “other insurance” clause:
If there is other applicable similar coverage available under one or more policies or provisions of coverage: with respect to “bodily injury” to an “insured”: 1. While “occupying” a vehicle owned by that “insured,” only the uninsured /underinsured motorist coverage applicable to that vehicle will apply and no other policies or provisions of coverage will apply . . .
7. On December 7, 1995, the claim representative of the defendant insurer, in response to the request from the plaintiffs counsel, confirmed the plaintiffs eligibility for underinsured motorist benefits under the policy with the defendant, notwithstanding the policy language and their knowledge of the existence of other coverage with Progressive for the occupied vehicle.
8. Upon receipt of this confirmation, and as a result, plaintiffs counsel proceeded to close out the plaintiffs liability claim against the tortfeasor.[1] He promptly sought and received permission from the defendant to settle with Arbella Mutual Insurance Company, the liability insurer of Mavis Sedlak, the at-fault operator who caused the injury to the plaintiff. A full release of claim was signed by the plaintiff on or about February 13, 1996, and provided to the tortfeasor.
9. In response to the request of the defendant, on May 14, 1996, a “medical package” and settlement demand was provided by the plaintiff through counsel in support of her underinsured motorist claim. On May 31, 1996, the claim representative of the defendant wrote to plaintiffs counsel disclaiming coverage for the claim made by the plaintiff.
10. At the point in time when the plaintiff settled her claim against Sedlak, she had not performed any investigation into the financial assets or capability of the tortfeasor to satisfy any judgment which might be entered in excess of her liability insurance limit of $20,000.00. At the time of the settlement, Mavis Sedlak, a divorced mother of one child, was living in Massachusetts in a rented apartment, was employed full time by a supermarket chain earning less than ten dollars per hour and had insignificant financial assets.
11. At that time, the plaintiffs personal injury claim had a value in excess of the tortfeasor’s bodily injury limits. Her injuries included two fractures of the fibula of the right leg and a bone of the foot,[2] together with associated pain and suffering and continuing partial disability. Special damages alleged include approximately $1820.00 in medical expenses and approximately $8000.00 in lost earning capacity from her *167 prior occupation. At the time of her settlement with Sedlak’s insurer, the value of her personal injury claim was between $50,000.00, and $75,000.00. Had suit been initiated against the tortfeasor and brought to a conclusion, the plaintiff, in all probability, would have obtained a judgment and execution for at least $50,000.00, together with interest and costs of suit.
12. At the time of her obtaining the policy with the defendant, Ralston was using her mother’s home in Glastonbury, Connecticut, as her mailing address. She was an “over-the-road” truck driver for eighteen years prior to 1995, and, for most of that period of time, she had no permanent residence of her own. She began to live in an apartment in Massachusetts in 1992, but would still regularly stay overnight with her mother and continued to use her mother’s address as her mailing address even after moving to Massachusetts. When she acquired the 1994 Jeep, she listed her address for purpose of the policy with the defendant as that of her mother. She obtained this policy through a Connecticut insurance agent. Indeed, even when she signed the release of her claim against Mavis Sedlak, she gave her address as Glastonbury, Connecticut.
RULINGS OF LAW
The plaintiff contends that she is entitled to recover for damages sustained as a result of the negligent misrepresentation by the defendant that she was eligible for underinsured motorist benefits, for her detrimental reliance upon those misrepresentations in that she relinquished a right to bring a cause of action against a tortfeasor and for a violation of G.L.c. 93A. The defendant contends that any reliance by her was unreasonable and that she has failed to prove actual damages. Additionally, the defendant contends that the law of Connecticut must be applied to these facts and that under said law, the plaintiffs Chapter 93A claim specifically, and her other claims generally, must fail as a matter of law.
Due to the significance of the choice of law issue to all of the claims of the plaintiff, I address it first.
‘Where the parties have expressed a specific intent as to the governing law, Massachusetts courts will uphold the parties’ choice as long as the result is not contrary to public policy . . . and as long as the designated State has some substantial relation to the contract.” Steranko v. Inforex, Inc., 5 Mass.App.Ct. 253, 260 (1977).
There is support in the evidence in the instant case that the parties have contracted to be bound by the law of Connecticut. Although the entire policy was not received into evidence, the endorsement relative to the underinsured motorist benefits coverage was. Under the section entitled “Arbitration,” Part D, the policy requires the arbitrator to “follow the rules of substantive law that would apply in the courts of the State of Connecticut.” Although not precisely “on-all-fours” with the issue at hand, it is some evidence of the parties’ intent and expectation to be bound by the law of Connecticut.
Moreover, even if the parties did not expressly agree to be bound by the substantive law of the State of Connecticut, there is “substantial relation” between the law of Connecticut to the contract in issue and the parties have not argued any public policy reasons, pro or con as to why the law of Connecticut should not apply to the facts herein.
Massachusetts has adopted a functional choice-of-law approach to contract cases, as in tort cases, rather than having such a decision turn on a single element, such as the place of the making of the contract. Bushkin Associates, Inc. v. Ratheon Co., 393 Mass. 622, 630-31 (1985). In Bushkin, the court advised that “[o]ne obvious source of guidance is the Restatement (Second) of Conflict of Laws (1971). At 632. ”In the absence of a choice of law by the parties, their rights are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated under §6." Restatement, supra, at §188(1). Factors under Section 6 that are said to be relevant to the choice of the applicable rule of law include: “(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictabiliiy and uniformity of result, and (g) ease in the determination and application of the law to be applied.” Id. at §6(2).
“The contacts to be taken into account in applying the principles of Section 6 to determine the law applicable to an issue include: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.” Id. at §188(2).
Notwithstanding the contacts that Massachusetts had with the underlying tort between Ralston and Sedlak, the State of Connecticut has more substantial contacts and relationship with the contract action and the related insurer “bad faith” claim between Ralston and this defendant. In addition to being the place where the defendant does business and the location of the claims office with which the plaintiff communicated in pursuance of her first-party claim against it, the plaintiff identified herself as being a resident of Connecticut, she housed her vehicle, the subject of the contract, in Connecticut, and she purchased a policy identified as a Connecticut automobile insurance policy with the assistance of a Connecticut insurance agent. The substantive law of Connecticut thus applies.
To establish an estoppel claim, or, in other words, detrimental reliance, the plaintiff must prove each of the following elements: first, that the defendant did or said something calculated or intended to induce the plaintiff *168 to believe that certain facts existed, and, second, that the plaintiff changed her position in reliance on those facts, thereby incurring some injury. Boyce v. Allstate Insurance Co., 236 Conn. 375 (1996). Similarly, to establish a claim for negligent misrepresentation, the plaintiff must prove that the defendant provided misleading information upon which the plaintiff justifiably relied and which caused pecuniary damage to the plaintiff. D’Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 218 (1987). These elements are not significantly different than the comparable causes of action in Massachusetts.
Here, there is no question that the defendant, through its claim representative, provided false and misleading information. The plaintiff was not eligible to recover underinsured motorist benefits under her policy with the defendant upon the facts at bar and it was wrong and misleading to state otherwise. There is also no question that the plaintiff changed her position as a result. The questions that remain are whether the plaintiff was justified in having relied on this statement and whether she was harmed as a result.
The plaintiff was represented by a competent and seasoned attorney who specializes in personal injury matters. The plaintiff placed her case in his hands and was justifiably relying on his professional judgment in informing her of her rights and in providing informed recommendations to her. He had represented few, if any, claimants under underinsured motorist benefits provided under Connecticut insurance policies, however. He did not have a copy of the policy language in his possession. He easily could have asked his client to bring her policy to him or he could have asked the defendant to send him a copy. He did neither. He did ask the defendant’s claim representative to state whether the plaintiff was qualified to claim under the policy. This was reasonable for him to do and put the claim representative on notice, or should have, that he was unsure or unfamiliar with the policy language. His request was also asking her for a statement of the insurer’s position with respect to coverage. The claim representative was competent and experienced. She was authorized and qualified to state the position of the defendant with respect to issues of coverage and settlement negotiation. It was not unreasonable for plaintiffs counsel, even if competent and experienced in his own right, to ask for and rely upon a confirmation of coverage given by the defendant’s claim representative.
Moreover, given the prompt, follow-up communication from plaintiffs counsel to her seeking permission to settle with the tortfeasor, she knew or should have known that the plaintiff was relying on her statement of eligibility in giving up any further right of action against Sedlak. The plaintiff was therefore justified in relying upon the defendant’s statement with respect to her eligibility for underinsured motorist benefits. Although the claim representative’s mistake as to eligibility for coverage cannot create coverage where none previously existed, and does not amount to waiver, she was authorized and experienced enough to express the position of the defendant as to eligibility so as to bind the defendant for her error in tort.
The plaintiff changed her position with respect to the tortfeasor by providing her with a release of all claims, and that such release was given in justifiable reliance upon the statement of eligibility given by the defendant’s claim representative. Had she pursued her claim against the tortfeasor to a judgment she would likely have obtained a judgment for an amount in excess of the bodily injury limits of Sedlak’s automobile insurance coverage. She has failed, however, to prove that the judgment was collectable in other than a nominal amount.
A judgment is presumed to be satisfied after twenty years. G.L.c. 260, §20. There is no question that the financial condition of the tortfeasor can change over the life of an execution issued against her, either for the better or the worse. However, the plaintiff has a burden to prove by preponderance of the credible evidence that her having obtained a judgment and execution would have led to a real, as opposed to speculative, satisfaction. The financial condition of the tortfeasor being what was shown by the evidence, namely, that she was all but “judgment-proof,” collection of any funds in satisfaction of an execution issued against her was improbable and purely speculative. The likelihood of Ralston pursuing an excess judgment against Sedlak under these circumstances was matched by the likelihood of Sedlak availing herself of bankruptcy protection.
Finally, with respect to the plaintiffs claim under the provisions of G.L.c. 93A, §2, given the application of the substantive law of Connecticut, this statute does not apply. Even if we were to look to the Connecticut law governing insurance claim settlement practices, the plaintiff has not satisfied her burden of proof against the defendant by the production of evidence in support of each element of such a claim. See Connecticut Gen. Stat. C. 704, §§38a-815 and 38a-816(6). Such a claim under this statutory scheme requires evidence of multiple incidents or a pattern of conduct committed with such frequency so as to indicate a general business practice. A single isolated incident such as found herein is not sufficient. Lees v. Middlesex Ins. Co., 229 Conn. 842, 643 A.2d 1282 (1994).
ORDER FOR JUDGMENT
For the foregoing reasons, judgment shall enter in favor of the defendant dismissing the complaint.

 No suit had yet been filed.

 In May 1996, a tear of the anterior cruciate ligament of the right knee was diagnosed and which presents a condition whereby her knee “gives-out”; she calls this condition a “trick-knee.” She has not had it surgically repaired and it underlies her claim of a permanent partial disability.